1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN E. LEWIS,

                           Plaintiff,

      v.

RYAN PUGH,

                       Defendant.

Case No. 3:17-cv-05227-MJP-TLF

REPORT AND
RECOMMENDATION

**Noted for January 4, 2019**

This matter has been referred to the undersigned Magistrate Judge and is before the Court on defendant's motion for summary judgment on plaintiff's civil rights claim under Federal Rule of Civil Procedure (FRCP) 56. Dkt. 44; *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that the Court grant defendant's motion and dismiss this case with prejudice.

## FACTS

In his complaint, plaintiff alleged the following: Plaintiff was incarcerated at Washingotn Correction Center in Shelton, Washington, in December 2016. One day at the end of yard time, he was stopped by and "had words" with a corrections officer named Gallegos. Complaint, Dkt. 4, p. 3. Defendant Ryan Pugh, another corrections officer, came over, and plaintiff stopped talking. *Id.* They walked down a track toward "the gate a camera." *Id.* Pugh then hit plaintiff in the face and broke his nose. *Id.* Pugh and Gallegos did not take him to medical afterward. *Id.* Gallegos and Pugh then lied in a disciplinary hearing. *Id.* Finally, the incident occurred in a place

where a camera would have captured it, but prison authorities refused to show plaintiff the video. *Id.*

Plaintiff submitted a response brief, but has not submitted any evidence. Defendant submitted declarations alleging the following facts:

The incident occurred in the recreational yard at WCC-Shelton on December 25, 2016. Declaration of James D. Gallegos, Dkt. 45, p. 2 & Attachments A, B (December 25, 2016, Initial Serious Infraction Report and Use of Force Report); Declaration of Ryan Pugh, Dkt. 46, p. 2. At around 1:30 p.m., the inmates in the yard were told to "yard up, meaning to return to their unit." Plaintiff did not yard up, but instead yelled "Merry Christmas, motherfucker! I ain't leaving! What are you going to do about it?" Dkt. 45, p. 2; Dkt. 46, p. 2. Gallegos told plaintiff to "cuff up," and plaintiff complied while Gallegos placed handcuffs on his wrists. Dkt. 45, p. 2; Dkt. 46, p. 2. At that time, Officer Pugh arrived to help Gallegos escort plaintiff out of the yard. Dkt. 45, p. 2; Dkt. 46, p. 2.

As Pugh and Gallegos escorted him out of the yard, Mr. Lewis began to shout epithets at them and physically resist. Dkt. 45, p. 2; Dkt. 46, p. 2. He started to twist away from them. Dkt. 45, p. 2; Dkt. 46, p. 2. Pugh repeatedly ordered plaintiff to stop pulling away. Dkt. 46, p. 2. Gallegos and Pugh attempted to pull plaintiff to the ground by his arms (which is consistent with training), but plaintiff—who is around six feet, four inches tall and weighs roughly 300 pounds—broke away and turned toward Pugh. Dkt. 45, p. 2; Dkt. 46, p. 2. Plaintiff then allegedly "arched his back and tilted back his head, appearing to head-butt Officer Pugh." Dkt. 45, p. 2; *see* Dkt. 46, p. 2.

Officer Pugh believed plaintiff was about to head-butt him, and because of his size, level of agitation, earlier threats, and current movements, Officer Pugh used force, allegedly to protect

himself. Dkt. 46, pp. 2-3. "Officer Pugh responded by applying an elbow impedance strike to Mr. Lewis's cheek as Lewis was moving his head forward." Dkt. 45, p. 3. This stopped plaintiff's movement and allowed Gallegos and Pugh to resume restraining him. They called other officers, who helped escort Lewis to a transport vehicle. Dkt. 45, p. 3; Dkt. 46, p. 3. During that escort, Pugh stayed out of sight to avoid plaintiff. Dkt. 46, p. 3.

## MOTION FOR LEAVE TO FILE LATE REPLY

Defendant moved for an extension of three days to file a reply brief and accompanying declarations. Dkt. 49. Defendant filed those documents three days later. Dkt. 50-55. After reviewing defendant's motion and the balance of the record, the Court finds good cause for an extension and accordingly GRANTS the motion at Dkt. 49.

## STANDARD OF REVIEW

A.    <u>Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure (FRCP), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party is required to support their arguments concerning whether a genuine dispute of material fact exists by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56(c)(1). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255; *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot disregard evidence at the summary judgment stage solely based on its self-serving nature, even if it is uncorroborated).

B.    <u>Section 1983 Standard</u>

To sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii)

that the violation was proximately caused by a person acting under color of state law. *See*

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

another's affirmative act, or omitted to perform an act which he was legally required to do that

caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

(quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## DISCUSSION

The Court should conclude that defendant is entitled to summary judgment because

plaintiff has not met his burden of showing a genuine issue of material fact for trial, and because

defendant is entitled to qualified immunity.

A.    Excessive Force Claim

Plaintiff asserts that Officer Pugh violated his Eighth Amendment rights by striking him

in the face. *See* Dkt. 4, p. 3. This appears to be an excessive force claim. *See* Dkt. 48.

A prisoner may base an Eighth Amendment claim on an officer's use of excessive force

when interacting with the prisoner. "When prison officials use excessive force against prisoners,

they violate the inmates' Eighth Amendment right to be free from cruel and unusual

punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To prevail on an excessive

force claim, a plaintiff must show "not only that the assault actually occurred but also that it was

carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or

restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010).

The Court must consider the following relevant factors to determine whether the use of

force was wanton and unnecessary: "the extent of injury suffered[,] . . . the need for application

of force, the relationship between that need and the amount of force used, the threat [to the safety

of staff and inmates] 'reasonably perceived by the responsible officials,' and 'any efforts to

REPORT AND RECOMMENDATION - 5

1   temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting

2   *Whitley v. Albers*, 475 U.S. 312, 320–321 (1986)).

3          Here, defendant has submitted evidence that negates essential elements of plaintiff's

4   excessive force claim. *See Nissan Fire & Marine Ins.*, 210 F.3d at 1102. In particular, Officers

5   Pugh and Gallegos submitted sworn affidavits, along with contemporaneous incident reports,

6   showing that:

7          -   Plaintiff instigated a confrontation with Officer Gallegos by shouting abusive

8              language at him and stating his intent to resist "yarding up." Gallegos Decl., Dkt. 45,

9              p. 2; Pugh Decl., Dkt. 46, p. 2.

10         -   Plaintiff is physically imposing—roughly six feet, four inches tall and 300 pounds.

11             Dkt. 46, p. 2

12         -   Plaintiff began resisting Officers Pugh and Gallegos while they attempted to escort

13             him. Dkt. 45, p. 2; Dkt. 46, p. 2.

14         -   Pugh and Gallegos attempted a less violent way to restrain plaintiff, by bringing him

15             to the ground by the arms. Dkt. 45, p. 2; Dkt. 46, p. 2.

16         -   Plaintiff twisted out of that maneuver and appeared to pull back, preparing to head-

17             butt Pugh. Dkt. 45, p. 2; Dkt. 46, p. 2. Pugh then struck him in the face with his

18             elbow. Dkt. 45, p. 3; Dkt. 46, pp. 2-3.

19         Considering the factors in *Hudson v. McMillan*, this evidence, taken in the light most

20  favorable to plaintiff as the non-moving party, shows the defendants had a need to use force in

21  response to a significant threat (an imminent head butt from a large man who was speaking

22  abusively), that the amount of force was proportional to the need, and that the officers' previous

23  efforts to temper the need for force—by bringing plaintiff to the ground—had been unsuccessful.

24

25

1  *See* 503 U.S. at 7.

2      In these circumstances, there is no genuine dispute as to whether Officer Pugh's use of

3  force was part of a good-faith effort to maintain or restore discipline, and not malicious or

4  sadistic. *See Wilkins*, 559 U.S. at 40.

5      Plaintiff has not carried his burden of rebutting this evidence and establishing a genuine

6  issue of material fact for trial. *See Matsushita Elec. Indus.*, 475 U.S. at 585-86. In particular,

7  plaintiff has submitted no evidence to create an issue of fact as to whether Officer Pugh's use of

8  force against him was "malicious[ ] and sadistic[ ]" rather than a good-faith effort to protect

9  himself and maintain order. *See Wilkins*, 559 U.S. at 40.

10     Instead, as noted above, plaintiff has not submitted any evidence at all.[1] Allegations in a

11 complaint are no substitute for evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

12 *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (noting plaintiff "cannot

13 defeat summary judgment with allegations in the complaint, or with unsupported conjecture or

14 conclusory statements"). Thus, although the Court must view the facts in the light most favorable

15 to plaintiff on defendant's motion for summary judgment, the only facts before the Court are

16 those in the declarations defendant has submitted.

17     Instead of submitting evidence, plaintiff contends that video of the incident exists, which

18

19 [1] After the parties completed the briefing on defendant's summary judgment motion, plaintiff submitted his own
20 declaration. Dkt. 56. It states that at 8:00 a.m. on December 25, Officer Gallegos called plaintiff over and told him to
   put his hands behind his back; that plaintiff was calm and did not move his head or feet; that he stood straight up and
   did not move forward (the declaration reads "toward," but this appears to be an error). *Id.* Plaintiff further states that
21 a counselor told him after the incident that Ryan Pugh had told him that plaintiff "can take hard shots to the face
   with all Ryan Pugh had." *Id.* He further alleges that camera footage exists to show his version of events. *Id.*

22 The Court should decline to consider the declaration, which was not timely submitted. *See* Local Civil Rule (LCR)
   7(b)(2), 7(d). In addition, even if the Court considers the declaration, it does not directly rebut defendant's evidence
23 regarding the portion of the incident when Officers Pugh and Gallegos escorted plaintiff, plaintiff resisted and
   attempted to head-butt Pugh, and Pugh struck plaintiff. Dkt. 56; *see* Dkt. 45, 46. Thus, the untimely declaration
24 would not present an issue of fact for trial.

25

REPORT AND RECOMMENDATION - 7

prison authorities have withheld from him. Dkt. 4, p. 4; Dkt. 48, p. 2. Plaintiff previously moved to compel production of this video, but the Court denied that motion because plaintiff had not conferred with counsel for defendant. Dkt. 33, 36. Discovery was open for over a year in this matter. *See* Dkt. 12, 38 (scheduling orders). Plaintiff thus had the opportunity to make requests for production, confer with defense counsel, and move to compel production in compliance with discovery rules.

A video is not necessary for plaintiff to present evidence of his version of events. Plaintiff could have submitted evidence in the form of his own testimony or that of other witnesses to substantiate that version. Notably, plaintiff's allegations in his complaint and response brief, while not evidence, are not directly inconsistent with the accounts in the declarations defendant submitted. The parties agree that plaintiff and Officer Gallegos had a confrontation; that plaintiff was handcuffed; that Officer Pugh came to assist and began to escort plaintiff; and that Pugh struck plaintiff in the face. *See* Dkt. 4, p. 3; plaintiff response to summary judgment motion, Dkt. 48, p. 2. Plaintiff's account omits certain facts that defendant has shown, but—even if substantiated with evidence—plaintiff's account would not contradict any of defendant's evidence so as to create an issue of fact for trial.

Because defendant has carried his burden at summary judgment with respect to plaintiff's excessive force claim and plaintiff has not, summary judgment for defendant is appropriate.

B.    <u>Qualified Immunity</u>

Defendant asserts that even if plaintiff has presented evidence sufficient to survive a summary judgment motion on his § 1983 claim, qualified immunity nonetheless protects him from liability for damages.

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have

1   known.'" *Kisela v. Hughes,* —— U.S. ——, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting

2   *White v. Pauly*, 580 U.S. ——, ——, 137 S.Ct. 548, 551 (2017)). Qualified immunity is an

3   affirmative defense to damages liability and does not bar actions for declaratory or injunctive

4   relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.

5   1991). The Court must decide the qualified immunity issue at the summary judgment stage when

6   the issue turns on questions of law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir.

7   2008). The Court can analyze the two prongs of qualified immunity in either order. *Pearson v.*

8   *Callahan*, 555 U.S. 223, 236 (2009).

9       In considering the first prong, the Court must ask, "[t]aken in the light most favorable to

10  the party asserting the injury, do the facts alleged show the officer's conduct violated a

11  constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

12      As discussed above, even viewed in the light most favorable to plaintiff, the facts do not

13  show that defendant's acts violated plaintiff's Eighth Amendment rights. Accordingly, defendant

14  is entitled to qualified immunity because the first prong of the qualified immunity test is not

15  satisfied. Accordingly, the Court does not need to address whether the constitutional right was

16  clearly established at the time of the events in question. *See Pearson*, 555 U.S. at 236.

17

18

19

20

21

22

23

24

25

1

**CONCLUSION**

2          Based on the foregoing discussion, the undersigned recommends that the Court GRANT

3    defendant's motion for summary judgment, Dkt. 44, and dismiss this case with prejudice.

4          The parties have **fourteen (14) days** from service of this Report and Recommendation to

5    file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to

6    file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*,

7    474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for

8    consideration on **January 4, 2019**, as noted in the caption.

9          Dated this 18th day of December, 2018.

10

11                                                    Theresa L. Fricke
                                                      United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 10