UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUSTIN E. LEWIS,<br><br>           Plaintiff,<br><br>    v.<br><br>RYAN PUGH,<br><br>           Defendant. | CASE NO. C17-5227MJP<br><br>ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION;<br><br>DENYING MOTION FOR SUMMARY JUDGMENT;<br><br>GRANTING MOTION TO APPOINT COUNSEL |

THIS MATTER comes before the Court on Plaintiff Justin E. Lewis' Objections to the Report and Recommendation of the Honorable Theresa L. Fricke, United States Magistrate Judge (Dkt. No. 61). Having carefully reviewed the Report and Recommendation, the Objections (Dkt. No. 63), the Response (Dkt. No. 64) and the related record, the Court declines to adopt the Report and Recommendation and DENIES the Motion for Summary Judgment. The Court GRANTS Plaintiff's Motion for Appointment of Counsel (Dkt. No. 14.)

| | **Background** |
|---|---|
| 1 | |
| 2 | **1. Factual Background** |

Plaintiff Justin E. Lewis brings this action against Defendant Ryan Pugh for excessive force in violation of the Eighth Amendment of the United States Constitution. (See Dkt. No. 4.) On December 25, 2016, Mr. Lewis was incarcerated at the Washington Correction Center ("WCC") in Shelton, Washington. (Id.) Mr. Lewis claims that, during yard time that day, he was stopped by Corrections Officer Gallegos. (Id.) After exchanging words with Officer Gallegos, Mr. Lewis claims he was approached by Defendant Officer Ryan Pugh who walked him towards the "Gate A Camera" before hitting him in the face and breaking his nose. (Id.) Mr. Lewis claims that Officers Gallegos and Pugh lied in the resulting disciplinary proceedings and never took him to medical to have his nose examined. (Id.) Mr. Lewis claims that the incident took place in view of the prison's security cameras. (Id.)

Officers Gallegos and Pugh do not dispute the fact that Officer Pugh struck Mr. Lewis' face while he was restrained in handcuffs. (See Dkt. No. 45 ("Gallegos Declaration") at ¶¶ 5-6; Dkt. No. 46 ("Pugh Declaration") at ¶¶ 4-6.) However, Officer Gallegos claims that, prior to the incident, Mr. Lewis refused to comply with directions to return to his unit and became agitated. (Gallegos Declaration at ¶ 3.) Officer Gallegos claims that Mr. Lewis yelled "Merry Christmas, motherfucker! I ain't leaving! What are you going to do about it?" and approached him with clenched fists. (Id. at ¶ 4.) Officer Gallegos instructed Mr. Lewis to "cuff up." (Id. at ¶ 5.) He complied and was placed into handcuffs. (Id.) At that point, Officer Pugh arrived to assist Officer Gallegos. (Id.) Officers Gallegos and Pugh claim that, as they escorted Mr. Lewis from the yard, he grew increasingly agitated, began tensing up his muscles and calling them names, and eventually broke away from Officer Gallegos' hold. (Gallegos Declaration at ¶ 6; Pugh

Declaration at ¶ 6.) As they attempted to move him to the ground, he "arched his back and tilted back his head, appearing to head-butt Officer Pugh." (Gallegos Declaration at ¶ 6; Pugh Declaration at ¶ 6.) According to Officer Pugh, "Mr. Lewis is a large man, approximately six feet, four inches and weighing around 300 pounds," and he believed that Mr. Lewis was preparing to head-butt him. (Pugh Declaration at ¶ 6.) Accordingly, Officer Pugh "applied a single impedance strike, a right elbow strike to the left cheek of Mr. Lewis' face to protect [himself]." (Id.)

Mr. Lewis filed a declaration disputing Officers Pugh and Gallegos' characterization of the events. (Dkt. No. 56 ("Lewis Declaration").) Mr. Lewis claims that he was "calm," "did not move [his] head," and did not jeopardize[] any persons safety or threaten[] prison security" at any point. (Id.) Mr. Lewis also claims that Officer Pugh later told another inmate that Mr. Lewis "can take hard shots to the face." (Id.) Mr. Lewis also claims—and Officer Pugh does not dispute—that as a result of the altercation, Mr. Lewis was not disciplined and did not receive a disciplinary write-up for staff assault or attempted staff assault. (Id.; see also Dkt. No. 63.)

**2. Procedural History**

Mr. Lewis initiated this action in March 2017. (See Dkt. No. 1.) In June 2017, Mr. Lewis filed a motion requesting appointment of counsel, which was denied. (Dkt. Nos. 14, 17.)

In January 2018, Mr. Lewis moved to compel production of video footage from the cameras in the yard, which he believed would likely show the assault and refute Officers Gallegos and Pugh's version of events. (Dkt. No. 33.) That order was denied for failure to meet and confer as required by Federal Rule of Civil Procedure 37 and the Local Rules. (Dkt. No. 36.) While the extent of discovery exchanged to date is not clear, it appears that Mr. Lewis has not propounded any interrogatories or requests for production. (See Dkt. No. 52 at ¶ 7.)

### 3. Report and Recommendation

In August 2018, Officer Pugh moved for summary judgment. (Dkt. No. 44.) As with the other motions filed in this case to date, the motion for summary judgment was referred to Magistrate Judge Fricke. In her Report and Recommendation, Magistrate Judge Fricke concluded that Officer Pugh was entitled to qualified immunity and to summary judgment on the excessive force claim. (Dkt. No. 61.) Magistrate Judge Fricke explained that the Gallegos and Pugh Declarations, along with contemporaneous incident reports, showed that Officer Pugh needed to use force; that the force used was proportional to the need; and that his previous efforts to reduce the need for use of force had been unsuccessful. (Id.) Plaintiff failed to offer evidence refuting the Gallegos and Pugh Declarations, and Magistrate Judge Fricke concluded that Officer Pugh's use of force was "part of a good-faith effort to maintain or restore discipline, and not malicious or sadistic" so as to support a claim for excessive force. (Id.) Magistrate Judge Fricke also concluded that Officer Pugh was entitled to qualified immunity. (Id.)

Mr. Lewis objects to the Report and Recommendation on the grounds that (1) Officers Gallegos and Emerson are "both under investigation for misconduct and assault" and (2) he did not receive any "write up for staff assault or attempt[ed] staff assault" and "responsible officials would write the inmate up for . . . staff assault if there is no camera that shows what really happened." (Dkt. No. 63.) Mr. Lewis also appears to indicate that, during a meet and confer, counsel for Officer Pugh—Daniel J. Judge—informed him that the Department of Corrections was unable to produce the requested camera footage. (Id.) Officer Pugh contends that Mr. Lewis has failed to raise a genuine dispute of material fact, and that "video surveillance footage is exempt from public disclosure and, as prison intelligence-related information, it is considered privileged." (Dkt. No. 64.)

**Discussion**

Under Federal Rule of Civil Procedure 72, the Court must resolve de novo any part of the Magistrate Judge's Report and Recommendation that has been properly objected to and may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

**1. Motion for Summary Judgment**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. The Court may not weigh the evidence or make credibility determinations. Id.; see also Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) (at the summary judgment stage, district court cannot disregard evidence solely based on its self-serving nature, even if uncorroborated).

The Supreme Court has instructed the federal courts to "liberally construe the 'inartful pleading' of pro se litigants." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982)). "Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel," Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), and pro se

plaintiffs are ultimately held "to a less stringent standard than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

Here, the Court finds that disputed questions of material fact preclude summary judgment. While it is true that a plaintiff cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements," Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003), Mr. Lewis has provided a sworn declaration refuting Officers Gallegos and Pugh's version of the events and has identified evidence sufficient to raise an inference that he did not pose a significant threat to their safety (e.g., that he was not written up for resisting or threatening prison staff). (See Dkt. No. 56.) Further, the parties do not dispute that Officer Pugh struck Mr. Lewis in the face while he was handcuffed. Mr. Lewis' allegations, if true, would indicate that Officer Pugh used force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline" so as to support a claim for excessive force in violation of the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 6 (1992); Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). These allegations, if true, would also establish that Officer Pugh violated clearly established law and is not entitled to qualified immunity. Since Hudson held unconstitutional specific actions similar to those alleged here (i.e., gratuitously punching and hitting prisoner while escorting him between facilities), it has long been clear—and every reasonable officer would know—that intentionally harming a prisoner without a disciplinary or other permissible purpose violates the Eighth Amendment. See 503 U.S. at 7-10.

The Court DENIES the Motion for Summary Judgment.

### 2. Motion to Compel and Motion to Appoint Counsel

As discussed supra, Mr. Lewis' motion to appoint counsel and his motion to compel were both denied. (Dkt. Nos. 17, 36.) Since then, it appears that Mr. Lewis has conferred by phone with Mr. Judge, and has requested (1) video footage from the WCC taken on the day of the incident and (2) a copy of the "Superintendent Use of Force Assessment." (See Dkt. No. 63; Dkt. No. 52 ("Judge Declaration") at ¶¶ 3-4, 6; Ex. B (Defendants' Supplemental Initial Disclosures).)

With respect to the video, Mr. Judge claims that "there were no video recordings made of the interactions in the yard at the Washington Corrections Center between Ryan Pugh and Justin Lewis on December 25, 2016" as "[t]he movable camera located in the surveillance building overlooking the yard on the 'point' was not pointed toward the area of the events . . . and no surveillance footage from any other nearby cameras was saved . . ." (Judge Declaration, Ex. B; see also Dkt. Nos. 53, 54, 55 (Declarations from WCC Staff).) As a result, the only relevant footage is a "hand-held video taken after the incident alleged in this case, during the escort of Justin Lewis by WCC Response and Movement custody staff." (Dkt. No. 53 at ¶ 5.) While counsel claims that a copy of this video was mailed to Mr. Lewis in March 2018, it is not clear whether Mr. Lewis ever received or reviewed the video. (Dkt. No. 52, Ex. B.)

With respect to the Superintendent Use of Force Assessment, counsel indicates that he received Mr. Lewis' request for this document in June 2018, but did not respond until September 2018, nearly a month *after* Mr. Lewis filed his response to the motion for summary judgment. (See Judge Declaration at ¶ 3.) This report, issued January 3, 2017, indicates that Officer Pugh's use of "an elbow strike on a restrained inmate" was "questionable" and that it was recommended that he review relevant policies and guidelines concerning use of force. (Id., Ex. 2.)

While not entirely clear from the record, it appears that Mr. Lewis has not otherwise propounded any interrogatories or requests for production of documents. (See Dkt. No. 52 at ¶ 7.)

A district court has "discretion to designate counsel to represent an indigent civil litigant" in "exceptional circumstances." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); see also 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. Wilborn, 789 F.2d at 1331. Here, the Court finds that both factors weigh in favor of appointment of counsel. This matter presents complex legal issues (e.g., discovery of video surveillance footage and documents that are potentially exempt from public disclosure, application of the doctrine of qualified immunity) which Mr. Lewis cannot be expected to articulate adequately as a pro se litigant. In addition, given that he has already defeated the motion for summary judgment, Mr. Lewis has adequately demonstrated a likelihood of success on the merits.

The Court therefore ORDERS the appointment of counsel for Mr. Lewis pursuant to 28 U.S.C. § 1915(e)(1). Once counsel has been secured, the Court will entertain a motion to reopen discovery.

**Conclusion**

For the reasons set forth above, the Court ORDERS as follows:

(1) The Court declines to adopt the Report and Recommendation;

(2) The Court DENIES the Motion for Summary Judgment (Dkt. No. 44); and

(3) The Court GRANTS the Motion to Appoint Counsel (Dkt. No. 14.).

The clerk is ordered to provide copies of this order to all counsel and to Magistrate Judge Fricke, and to take appropriate steps to secure the appointment of counsel for Mr. Lewis.

Dated January 25, 2019.

Marsha J. Pechman
United States District Judge