The Honorable Marsha J. Pechman
The Honorable Theresa L. Fricke

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| JUSTIN E. LEWIS, | NO.  3:17-cv-5227-MJP-TLF |
| Plaintiff, | DECLARATION OF ROBERT HERZOG IN SUPPORT OF LCR 37(a)(2) EXPEDITED JOINT MOTION REGARDING DISCOVERY |
| v. | |
| RYAN PUGH, | |
| Defendant. | |

I, ROBERT HERZOG, make the following declaration:

1.      I have been employed by the Washington State Department of Corrections (DOC) since April 1982. In my 37-year career with DOC, I have served for 19 years as uniformed custody staff. In these various positions, I was tasked with maintaining the safety and security of offenders, staff, and visitors. In addition, I have served as an Associate Superintendent, Deputy Superintendent, and Superintendent of a number of DOC facilities. From April 2012 to April 2015, I was the Superintendent of the Monroe Correctional Complex, which included oversight of the Special Offenders Unit, Twin Rivers Unit, Intensive Management Unit, and the Washington State Reformatory. In April 2015, I took the position of Deputy Director of Prisons

DECLARATION OF ROBERT HERZOG
IN SUPPORT OF LCR 37(a)(2)
EXPEDITED JOINT MOTION
REGARDING DISCOVERY

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  for DOC at Headquarters in Tumwater, Washington. As part of those duties, I oversaw six

2  prisons (Washington State Penitentiary, Coyote Ridge Correction Center, Stafford Creek

3  Correction Center, Clallam Bay Correction Center, Olympic Correction Center, and Cedar Creek

4  Correction Center). I was also responsible for all Restricted Housing Unit operations (i.e. all

5  segregation and MAX custody operations), and was the final decider for placement decisions for

6  all life without parole and de facto lifers. I am also responsible for strategic statewide leadership

7

8  and oversight for Investigation and Intelligence Units (IIU) and Safety and Security Audits.

9        2.      In 2017, I took the position Assistant Secretary of Prisons for the Department at

10  Headquarters in Tumwater, Washington.  Duties of this position include providing overall

11  leadership, direction, strategic planning and oversight for safety, security, and programming

12  operations and related activities for all Washington state prisons which includes 10 adult male

13

14  and 2 adult female correctional facilities housing approximately 18,000 offenders and employing

15  5,000 plus custody and non-custody staff.   I am familiar with the workings of the prisons, and I

16  possess extensive experience and knowledge regarding security and administration concerns.

17        3.      The primary goals in operating correctional facilities are carrying out the

18  incarceration ordered by the court, protecting the public, providing rehabilitative programs as

19  required or allowed by law, and maintaining order and security within the facilities. The latter is

20

21  particularly important in order to protect the safety of the public and all persons within the

22  correctional facilities, including volunteers, correctional facility staff, and offenders.

23        4.      There are numerous methods for maintaining the secure and orderly operation of

24  a correctional facility. Training of officers in the use of force to maintain order and security for

25  offenders and correctional facility staff is crucial.

26

DECLARATION OF ROBERT HERZOG            2            ATTORNEY GENERAL OF WASHINGTON
IN SUPPORT OF LCR 37(a)(2)                                   Torts Division
EXPEDITED JOINT MOTION                                  7141 Cleanwater Drive SW
                                                             PO Box 40126
REGARDING DISCOVERY                                  Olympia, WA 98504-0126
                                                          (360) 586-6300

5.     The following materials which I understand have been sought by the offender-plaintiff in this case implicate significant DOC security concerns, and have been produced with DOC security information redacted:

    a.   DOC restricted policy 410.200, Use of Force, revision date, 6-23-14 (attached as Exhibit A);

    b.   Washington Corrections Center Operational Memorandum, WCC 410.200, Use of Force, revision date 6-24-16 (attached as Exhibit B);

    c.   Defense Tactics Manual 2016 (attached as Exhibit C);

    d.   Prisons Division In-service Control Tactics 2016 training synopsis (attached as Exhibit D.)

6.     In addition, the 2016 Control Tactics Practical Testing Quiz sheet test subject matter areas have been redacted as well as DOC security information; and the DT Written Test Key has been produced with questions and answers redacted; and the DT form produced with test questions redacted to protect the DOC interest in the security of the officers. These documents are attached as Exhibit E.

7.     I understand that the Court has found that issues of fact exist concerning the use of force by Defendant Officer Ryan Pugh in a single incident with the plaintiff Justin Lewis.

8.     The production of the foregoing documents without redacting DOC security information to an offender would compromise institutional security.  Knowledge about the policies on use of force and the prescribed tactics and the circumstances under which they would be deployed by a corrections officer would negate the effectiveness of the response by

DECLARATION OF ROBERT HERZOG
IN SUPPORT OF LCR 37(a)(2)
EXPEDITED JOINT MOTION
REGARDING DISCOVERY

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

corrections personnel to an offender disturbance or threat. Dissemination of such knowledge would jeopardize the safety of such officers who do respond to such situations.

9.      The same considerations as stated below with respect to video surveillance information apply to policies in place that govern the use of force by correctional staff within DOC. Offenders who violate prison rules are subject to a broad array of sanctions, including loss of good conduct time, which increases the amount of time an offender must stay in prison. If litigants were allowed to get any of DOC's use of force policies through public disclosure or civil discovery requests, they would get a blueprint for fashioning conduct to test the limits of the correctional staff's permissible use of force which could multiply efforts to evade prison discipline and "baiting" correctional officers with whom an offender may hold a grudge.

10.     Given its high value to offenders and others as counterintelligence, knowledge regarding DOC's use of force training and policies can be used by incarcerated individuals as currency, fostering both violence and illicit transactions within prison walls. For these reasons, nondisclosure of prison policies and training regarding the use of force is essential to effective law enforcement by DOC, including effective enforcement of DOC disciplinary regulations.

11.     Another important tool for maintaining the security and orderly operation of prisons is remote electronic surveillance systems, which are in use in all of DOC's major facilities. DOC's electronic surveillance systems consist of fixed camera emplacements located in various positions throughout a prison that can be monitored contemporaneously by staff and/or have recording capabilities. Electronic surveillance is an essential element of maintaining effective control over a population that is 100% criminal in its composition and is accustomed to evading detection and exploiting the absence of authority, monitoring, and accountability.

DECLARATION OF ROBERT HERZOG                    4                 ATTORNEY GENERAL OF WASHINGTON
IN SUPPORT OF LCR 37(a)(2)                                          Torts Division
EXPEDITED JOINT MOTION                                          7141 Cleanwater Drive SW
REGARDING DISCOVERY                                               PO Box 40126
                                                                                    Olympia, WA 98504-0126
                                                                                    (360) 586-6300

This is particularly true in facilities like the one at issue here, Stafford Creek, which staffs only 276 custody personnel while housing over 1,900 offenders.

12.     If it were financially feasible to do so, every area of a prison would be video monitored and recorded 24 hours a day to ensure any act of victimization or malfeasance would be discovered and persons held accountable. Unfortunately, that is not possible under DOC's budget. Since the resources are not available to accomplish 100% surveillance at all times, it is mission critical that offenders, their cohorts, and visitors not know the capabilities and the limitations of DOC's surveillance systems.

13.     Not all surveillance cameras in DOC facilities are actively monitored by staff. Some cameras are only monitored by staff and create no recordings. Some cameras only record during specific times of day and not others. Some camera stations (camera housings such as boxes and bubble housings) do not contain cameras at all. Some cameras have poor resolution or can be out of service. Some cameras have very narrow fields of view, while others have wide fields of view. Some are PTZ (pan, tilt, zoom) which have powerful abilities to capture fine detail at long distances. Some are controlled by the person monitoring the camera. Some pan a wide field automatically. Some cameras are so well hidden that they are not suspected by offenders to be present. On the other hand, rumors abound among inmates that there are cameras where none exist.

14.     It is significant advantage to have offenders uncertain as to what is being monitored, what is being recorded, and what is in the field of view. Offenders will often use "blind spots" (locations that have infrequent staff presence and no electronic surveillance) to commit acts of violence and to purvey contraband. In reconstructing incidents and interviewing

DECLARATION OF ROBERT HERZOG                    5                    ATTORNEY GENERAL OF WASHINGTON
IN SUPPORT OF LCR 37(a)(2)                                          Torts Division
EXPEDITED JOINT MOTION                                             7141 Cleanwater Drive SW
                                                                   PO Box 40126
REGARDING DISCOVERY                                                Olympia, WA 98504-0126
                                                                   (360) 586-6300

offenders, it has been found that incident location is often chosen due to a perceived lack of surveillance. In my expert opinion, surveillance, real or imagined, is a powerful deterrent to assaults and other problematic behaviors by offenders.

15. Providing access to recordings of DOC surveillance videos would allow others to accurately determine which areas are weak or devoid in DOC's ability to capture identities in the aftermath of an incident or crime. The videos could also enable others to study staff movement habits or identify areas or timing of perceived weaknesses in the security of DOC's facilities. Sexual predators could use this information to prey upon weaker offenders. Offenders could also use this information to commit assaults on other offenders. Visitors could use this information to uncover new methods to pass contraband for introduction into facilities. Surveillance video could also reveal the internal layout and design of a facility (such as whether it is a concrete or wood structure) or of specific security features (such as whether a particular door uses electronic or key locking mechanism). These would leave DOC facilities vulnerable to a breach of security by not only offenders but also visitors or other members of the general public.

16. The concerns regarding dissemination of surveillance video are not limited to merely requests by offenders. Indeed DOC restricts access to surveillance videos in a number of other situations. For example, not all DOC staff are provided access to surveillance video, and when staff need to review surveillance video in relation to issues concerning bargaining units, they are not provided copies but are only allowed to review the tape. DOC also provides only limited disclosures to its law enforcement partners by providing copies of surveillance video on a case-by-case basis where criminal prosecution is likely. Disclosure of prison surveillance video

DECLARATION OF ROBERT HERZOG
IN SUPPORT OF LCR 37(a)(2)
EXPEDITED JOINT MOTION
REGARDING DISCOVERY

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

in only narrow circumstances is essential. Maintaining tight control on surveillance video prevents dissemination of important intelligence regarding the security practices of DOC (video surveillance capabilities, staff movement habits, locking mechanisms, etc.) in addition to the layout, construction, and design of particular facilities. This is the same as applied to offenders and also non-offenders because the release of surveillance video could result in further secondary dissemination.

17.     Prison surveillance cameras provide staff and officials a steady and valuable stream of intelligence information, which is used in prison investigations and is often used to support prison infractions and/or criminal prosecutions. DOC is authorized by statute to create and enforce a comprehensive system of prison discipline, which is codified in Chapter 137-25 WAC and Chapter 137-28 WAC. Inmates who violate prison rules are subject to a broad array of sanctions, including loss of good conduct time, which increases the amount of time an offender must stay in prison. If litigants were allowed to get any of DOC's recorded surveillance videotapes through public disclosure or civil discovery requests, they would get not only the specific intelligence information that was recorded, but also the specific intelligence information of the surveillance and recording capabilities, security practices, and physical plant details of DOC institutions. Worse still, given its high value to offenders and others as counterintelligence, knowledge regarding DOC's surveillance systems and their capabilities can be used by incarcerated individuals as currency, fostering both violence and illicit transactions within prison walls. For these reasons, nondisclosure of prison surveillance videotapes is essential to effective law enforcement by DOC, including effective enforcement of DOC disciplinary regulations.

DECLARATION OF ROBERT HERZOG
IN SUPPORT OF LCR 37(a)(2)
EXPEDITED JOINT MOTION
REGARDING DISCOVERY

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    I declare under penalty of perjury under the laws of the State of Washington that the

2  foregoing is true and correct.

3    EXECUTED this _____ day of August, 2019, at Tumwater, Washington.

4

5

6                                          ROBERT HERZOG
7                                          Assistant Secretary of Prisons
                                          Washington State Department of Corrections
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF ROBERT HERZOG              8          ATTORNEY GENERAL OF WASHINGTON
IN SUPPORT OF LCR 37(a)(2)                                      Torts Division
EXPEDITED JOINT MOTION                                    7141 Cleanwater Drive SW
REGARDING DISCOVERY                                            PO Box 40126
                                                          Olympia, WA 98504-0126
                                                             (360) 586-6300

**CERTIFICATE OF SERVICE**

I hereby declare that on this 19th day of August, 2019, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiff:*

Dan N. Fiorito, III
The Law Office of Dan N. Fiorito, III
844 NW 48th Street
Seattle, WA 98107
dan@danfiorito.com

Dean Williams
Johns Monroe Mitsunaga Kolouskova, PLLC
11201 SE 8th St. Suite 120
Bellevue, WA 98004
williams@jmmlaw.com

DATED this 19th day of August, 2019.

ROBERT W. FERGUSON
Attorney General

*/s/ Christopher Clay*
CHRISTOPHER CLAY, WSBA No. 30677
Assistant Attorney General
Office of the Attorney General
Torts Division
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6428
Chris.Clay@ATG.WA.GOV
Attorneys for Defendant

DECLARATION OF ROBERT HERZOG
IN SUPPORT OF LCR 37(a)(2)
EXPEDITED JOINT MOTION
REGARDING DISCOVERY

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| | REVISION DATE 6/23/14 | PAGE NUMBER 1 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

**REVIEW/REVISION HISTORY:**

Effective:     9/17/01
Revised:      5/16/06
Revised:      8/27/07
Revised:      1/13/09
Revised:      6/14/10
Reviewed:    11/15/10
Revised:      8/22/11
Revised:      10/14/13
Revised:      6/23/14

**SUMMARY OF REVISION/REVIEW:**

III.B., V.H.3.a., and VIII.A.5.a. - Added clarifying language
IX.A.1. & D.1.d., XII.C.3.c.4), and Section XIII. - Adjusted reporting requirements and added form usage

**APPROVED:**

_____
**BERNARD WARNER**, Secretary
Department of Corrections

6/19/14
_____
Date Signed

00700001
Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** EMERGENCY MANAGEMENT SYSTEM **POLICY** | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| | REVISION DATE 6/23/14 | PAGE NUMBER 2 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; ACA 4-4090; ACA 4-4199; ACA 4-4202; ACA 4-4203; ACA 4-4206; ACA 4-4405; DOC 400.100 Incident and Significant Event Reporting; DOC 400.110 Reporting and Reviewing Critical Incidents; DOC 410.040 Incident Command System (ICS); DOC 410.230 Use of Deadly Force; DOC 410.235 Use of Force Training and Qualification; DOC 410.240 Armory/Firearms Management; DOC 610.010 Offender Consent for Health Care; DOC 630.540 Involuntary Antipsychotic Administration; DOC 890.090 Respirator Program; Records Retention Schedule

**POLICY:**

I.      The Department has established procedures for the use of force to control an offender.

II.     [4-4090] [4-4206]  The Department restricts the use of physical force to the following purposes, and then only after other reasonable force options have been attempted:

      A.      Protecting oneself, others, or property,
      B.      Preventing escape,
      C.      Maintaining or regaining control, and
      D.      Assisting in the involuntary administration of medication.

III.    [4-4206]  The use of force as punishment, personal abuse, harassment, or coercion is prohibited and will not be tolerated.

IV.     Force will not be used to inflict unnecessary pain and suffering or used maliciously for the purpose of causing injury to the offender.

**DIRECTIVE:**

I.      General Requirements

      A.      Employees will exercise good judgment, discipline, caution, objective reasonableness, and restraint when using force.

      B.      The following criteria will be followed when the use of force is necessary:

            1.      All reasonable steps will be taken to de-escalate or prevent any incident that would likely result in the use of force,

            2.      Resistance must be evident,

            3.      The amount of force used must be directly related to the level of resistance and/or level of perceived threat presented by the offender(s), and

00700002
Lewis v. Pugh



| | STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br>***RESTRICTED***<br>EMERGENCY MANAGEMENT SYSTEM<br>**POLICY** | APPLICABILITY<br>**PRISON** | | |
|---|---|---|---|---|
| | | REVISION DATE<br>6/23/14 | PAGE NUMBER<br>3 of 17 | NUMBER<br>**DOC 410.200** |
| | | TITLE | **USE OF FORCE** | |

4. Per Use of Force Options (Attachment 4), only the amount of force reasonably necessary to resolve an incident will be used.

C. Employees will only be authorized to use force options which they have been trained and qualified to use unless there is an imminent threat of death or serious bodily injury to themselves or others.

   1. When there is an imminent threat of death or threat of serious bodily injury to themselves or others, employees may use any available means to stop the action in the most reasonable manner possible.

D. Any employee, contract staff, or volunteer at the scene of an incident will provide assistance in the defense of another person by:

   1. Calling the designated emergency number to report the incident and/or summoning custody employees to the scene,
   2. Issuing a verbal order to stop the action, and/or
   3. Assisting in controlling an offender.

II. Emergent Situations

A. In the following emergent situations, employees will be authorized to use the amount of force reasonably necessary without prior approval:

   1. Self-defense,
   2. Defense of another,
   3. Maintenance of security (e.g., escape, spread of a disturbance),
   4. Prevention of a crime that would constitute a felony, and
   5. Prevention of suicide or self-harm.

B. The Shift Commander/Unit Supervisor will be notified as soon as possible after an emergent use of force.

III. Non-Emergent Situations

A. The Shift Commander will be notified before any force is used. The Shift Commander will:

   1. Confirm that an order was given to which the offender refused to comply,

   2. Obtain delegated authority, if necessary, and

   3. Ensure completion of the following:

      a. Resolution options are developed,

00700003<br>Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS *RESTRICTED* *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| | REVISION DATE 6/23/14 | PAGE NUMBER 4 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

b. Trained and qualified employees are assembled,

c. In situations involving a known or suspected Seriously Mentally Ill Offender (SMIO), available mental health providers have been consulted (e.g., in person, via phone) for confrontation avoidance procedures,

d. Medical records are checked before authorizing the force options,

e. Appropriate Personal Protective Equipment (PPE) is provided and used.

B. In situations where there are obvious language barriers and/or auditory limitations, interpreters or other non-traditional means of communication should be used when practical.

IV. Use of Force Options

A. Use of force should occur consistent with Use of Force Options (Attachment 4) and Force Option Guidelines (Attachment 2).

B. The following are the available force options as indicated by Use of Force Options (Attachment 4):

1.
2.
3.
4.

5.
6.



C. Employees will identify the level of perceived threat and/or level of resistance exhibited by the offender and apply the amount of force reasonably necessary using Use of Force Options (Attachment 4) as a guide.

1. Actions should take place in the order listed on Use of Force Options (Attachment 4) unless dispensing with one or more options is necessary to immediately resolve the situation.

2. In all cases, employee presence and verbal intervention should occur before and continue throughout the use of force.

00700004
Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 5 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

3.  The amount of force reasonably necessary is determined by the exact nature of each situation and the totality of the circumstances facing the employee on the scene.

4.  Force Option Guidelines (Attachment 2) will be reviewed with employees who may authorize a non-emergent use of force so they are familiar with the various levels of force and options available.

D.  Passive Resistance Response

1.  In a non-emergent situation where an offender displays passive resistance, any of the following may be used:

    a.
    b.
    c.



2.  If the above actions fail to gain the compliance of the offender(s), other progressive means of force may be initiated.

E.  Active Resistance Response

1.  For emergent or non-emergent situations, active resistance interventions include, but will not be limited to:

    a.
    b.
    c.



V.  Oleoresin Capsicum (OC) Aerosol Products

A.  All ⬛ 20 ⬛ are required to carry OC on post.

1.  ⬛ 20 ⬛ and ⬛ 20 ⬛ are authorized to carry and use OC regardless of post and/or assignment.

B.  OC may be used without prior approval for self-defense and the defense of another.

00700005
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| **RESTRICTED** EMERGENCY MANAGEMENT SYSTEM **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 6 of 17 | NUMBER **DOC 410.200** |
| | TITLE **USE OF FORCE** | | |

C.  Employees authorized to use or supervise the use of OC must be trained and experience a one-time exposure.

D.  OC aerosols that are approved for use are ████████ 20 ████████ products. No other aerosol products will be authorized without specific, written approval from the Assistant Secretary for Prisons.

    1.  For on-post carry, the ████████ 20 ████████ is the only authorized product.

    2.  For employee OC training and exposures, aerosol products that are ██ 20 ██ ████ 20 ████ should be used.

E.  OC aerosols products must be certified by the manufacturer as non-flammable and ████ 20 ████ safe. Authorized aerosol products are listed in Attachment 1.

F.  OC products delivered by means other than aerosol (i.e., ████ 20 ████ ████ 20 ████ are considered less-lethal impact munitions and are Intermediate Force options.

G.  Non-Emergent Use

    1.  Non-emergent (i.e., preplanned) use of OC aerosol products requires authorization from the Shift Commander/Unit Supervisor.

    2.  Non-emergent use of OC aerosol will only be authorized when, in the opinion of a health care practitioner, it would not pose a health risk to the offender(s). A health care practitioner will review the offender health record against the product's Material Safety Data Sheet(s) to determine if a health risk exists.

    3.  Immediately after the incident has been resolved, employees will verify the condition and welfare of nearby offenders and others who may have been unintentionally exposed to OC aerosol spray.

H.  Emergent Use

    1.  The Intensive Management Unit/Segregation Unit/Mental Health Unit/ Intensive Treatment Unit Sergeant may authorize the emergent use of OC aerosol products when an offender:

        a.  Is ████████ 20 ████████ ████ 20 ████ immediate use of OC may be appropriate.


00700006
Lewis v. Pugh



| | | |
|---|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br>**RESTRICTED**<br>*EMERGENCY MANAGEMENT SYSTEM*<br>**POLICY** | **APPLICABILITY**<br>**PRISON** | |
| | **REVISION DATE**<br>6/23/14 | **PAGE NUMBER**<br>7 of 17 | **NUMBER**<br>**DOC 410.200** |
| | **TITLE**<br><br>**USE OF FORCE** | |

      b.  Is ██████████ **20** ██████ immediate use of OC may be appropriate.

      c.  Has ████████ **20** ██████ etc., in which case the Sergeant will notify the Shift Commander/Unit Supervisor and receive delegated authority for desired action.

  2.  Employees will be authorized to use OC aerosol products to defend themselves, other employees, or an offender(s) from an assault or imminent threat of assault if no other reasonable options are available.

      a.  Precautions will be taken to avoid or minimize exposure to those uninvolved in the situation.

      b.  The Shift Commander/Unit Supervisor must be notified as soon as possible after the emergent use of OC.

  3.  All affected individuals will be removed from the scene as soon as possible after control is achieved.

      a.  Copious amounts of cool, fresh water will be provided to cleanse the affected areas of the body.

      b.  Medical personnel will evaluate all individuals affected.

VI.  Respirator Requirements

  A.  Respirators (i.e., protective masks) will be worn by all employees/contract staff who might be exposed to OC or ██ **20** in non-emergent use of force situations.

    1.  Employees/contract staff in posts and positions that require respirator use must meet the requirements outlined in DOC 890.090 Respirator Program.

  B.  The Shift Commander will ensure that all extraction team members are certified in the Respirator Program.

    1.  Extraction team members include any employees that may be at the incident site (e.g., video camera operator, restraint/key control officer).

  C.  Each facility will maintain a current roster of employees/contract staff trained and certified to use respirators. Current lists will be located where protective masks are stored and in the Shift Commander's office.

00700007<br>Lewis v. Pugh

| | STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br><br>**RESTRICTED**<br>**EMERGENCY MANAGEMENT SYSTEM**<br>**POLICY** | APPLICABILITY<br>**PRISON** | | |
|---|---|---|---|---|
| | | REVISION DATE<br>6/23/14 | PAGE NUMBER<br>8 of 17 | NUMBER<br>**DOC 410.200** |
| | | TITLE<br><br>**USE OF FORCE** | | |

VII.   Intermediate Force

    A.   [4-4199]  The Shift Commander will obtain a delegation of authority from the Superintendent/Duty Officer before the deployment and use of intermediate force options.

    B.   The Shift Commander may authorize the emergent use of intermediate force if delay of the delegation of authority by the Superintendent/Duty Officer may result in serious bodily injury to any person, jeopardize facility security, or lead to the escape of the offender(s).

    C.   Intermediate force options include:

        1.
        2.
        3.      **20**
        4.
        5.

    D.   Before intermediate force options are deployed and/or used, the following should occur:

        1.   **20**

        2.   When circumstances permit and **20** **20** inform offender(s) that force will be used in the event of noncompliance with issued orders.

            a.   The offender(s) will be given the opportunity to voluntarily comply with the given orders before intermediate force options are used.

        3.   When time and circumstances are an issue, the Incident Commander may authorize the **20** **20**

VIII.   Planning for the Use of Force

    A.   Employees involved in planning the use of force will ensure:

        1.   The quantity of OC, **20** less-lethal impact munitions **20** and **20** is appropriate for the incident.

        2.   The method of dissemination to be used is consistent with the manufacturer's recommendations and the incident environment.

00700008
Lewis v. Pugh

| | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 9 of 17 | NUMBER **DOC 410.200** |
| | TITLE **USE OF FORCE** | | |

3.  Exit routes for employees and offenders are identified before the use of OC, ▇20▇ less-lethal impact munitions, ▇20▇ and ▇20▇

4.  A medical review is conducted. In the event a health problem is found, the Incident Commander will be promptly notified and may consider an alternative tactic of controlling the offender(s), if circumstances permit.

5.  In situations involving a known or suspected SMIO, a mental health review will be conducted. The Incident Commander will consult with the designated mental health provider and consider the offender's likely response to use of force, recommendations, and potential risks to employees, the offender, and property.

    a.  If an off-site mental health provider is consulted, the use of force report will include a statement regarding the provider's name and recommendation made.

B.  Application of OC, ▇20▇ less-lethal impact munitions, ▇20▇ or ▇20▇ will cease immediately upon the offender's compliance with given orders.

C.  If circumstances allow, air handling units should be shut down, windows opened, and fans readied for OC or ▇20▇

D.  An assessment will be made of wind direction/ventilation patterns to determine cross-contamination and the need for evacuation of the areas that may be indirectly affected.

E.  In non-emergent situations, the Use of Force Checklist (Attachment 3) will be used.

F.  Preventing Positional Asphyxia

    1.  Immediately following a physical altercation or when OC or ▇20▇ is used, when deemed safe, employees/contract staff will ensure the offender is observed and kept in an upright position.

    2.  Employees/contract staff will take precautions to ensure the offender has a clear unobstructed airway and is in a position that does not cause compression to the chest (i.e., kneeling, standing, sitting).

    3.  Offenders who remain uncooperative will be transported in a manner that does not constrict expansion of the chest. Offenders will be monitored by

00700009
Lewis v. Pugh



| | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** EMERGENCY MANAGEMENT SYSTEM **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 10 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

employees throughout the process of decontamination and placement in their final holding cell/area.

    4.    A health services employee/contract staff will observe the offender until normal breathing is resumed.

IX.    Recording Use of Force

    A.    Use of force will be video recorded unless there is no time to assemble equipment.

        1.    If the incident is not video recorded, photographs of involved offender(s) will be taken. DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report will be used to explain the reasons why the use of force is not video recorded.

    B.    Video recording will begin as soon as possible and should be continuous to record as much of the incident as feasible. The video camera will record the incident until the offender is placed in his/her final destination.

    C.    The entire use of force incident will be video recorded, especially the offender(s) actions and employee response/tactics. This includes situations where the offender may be naked, or become naked (e.g., clothes removed for decontamination process). The camera will remain focused on the offender(s).

    D.    The following format will be used for recording use of force:

        1.    Away from the incident site:

            a.    An introduction including the names(s) and DOC number(s) of offender(s) involved, the date and time, and the name of video operator,

            b.    A statement by the Team Leader indicating why the use of force is necessary (e.g., potential threat of injury to self or others, damaging property),

            c.    A chronological description of the events that led to the decision to authorize the use of force and any alternative actions to the use of force that have been taken,

            d.    The names of employees, and corresponding PPE identification number if applicable, participating in the use of force and specific instructions to each,

00700010
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 11 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

    e.    The name of the person authorizing the use of force,

    f.    When OC, ▮20▮ or ▮20▮ use is planned, a statement from a health care practitioner concerning its use and any health risk noted,

    g.    In situations involving a known or suspected SMIO, a statement from the designated mental health provider on the offender's likely response to the use of force, recommendations, and potential risks to employees, the offender, and property, and

    h.    The off-site mental health provider name and recommendation, if one is consulted.

2.    At the incident site:

    a.    The order issued to the offender(s) to comply, and the statement that noncompliance will result in the use of force,

        1)    The offender(s) will be allowed an opportunity to comply.

        2)    In situations involving a known or suspected SMIO, at the discretion of the Incident Commander, the on-site mental health provider will be allowed to communicate with the offender.

    b.    If the offender(s) does not comply, the direction to employees to apply the amount of force necessary,

    c.    The application of force, restraint of the offender(s), and decontamination process,

    d.    The medical examination of the offender(s) and a brief description of the offender's condition, and

    e.    The final placement of the offender(s) in the cell(s) and removal of restraints.

3.    After-action summary away from the incident site:

    a.    The time, date, and location,
    b.    The offender(s) involved,
    c.    The employee(s) involved,
    d.    A description of the use of force,
    e.    Any injuries noted,

00700011
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| | REVISION DATE 6/23/14 | PAGE NUMBER 12 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

     f.    Where the offender is now located,

     g.    The offender's current behavior, and

     h.    A statement indicating the conclusion of the videotaping of the incident.

E.    Use of force videos will be confidential and will not be accessible to offenders. The videos will be reviewed by employees on a need to know basis or for training purposes.

F.    Photographs of any offender or employee injuries will be taken after the incident.

X.    Medical Evaluation

    A.    A health care practitioner will be present during a use of force situation, if time and circumstances permit.

    B.    [4-4203]  All employees and offender(s) should be assessed by a health care provider immediately following a determination that the situation is safe.

    C.    All individuals injured in the incident will receive a medical examination and treatment. At facilities where no health care provider is on duty, health services employees/contract staff may be called to the facility or employees/offender(s) may be transported to an outside medical facility.

        1.    Employees will be provided emergency first aid care. If further treatment is required, the employee may be referred to or transported to a private health care provider of his/her choice.

        2.    Force will not be used to complete offender medical assessments. Any offender refusal of treatment will be handled per DOC 610.010 Offender Consent for Health Care.

XI.    Decontamination

    A.    Decontamination of the offender(s) will start as soon as employees can safely proceed. Clean-up of affected areas will be accomplished per the manufacturer's recommendations.

    B.    Whenever OC or ▮▮20▮▮ is used, employees will ensure that all affected individuals are removed from the area into fresh air and kept in an upright position until normal breathing returns.

    C.    Once the offender is secured in a cell or holding area, the offender will be instructed to:

00700012
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 13 of 17 | NUMBER **DOC 410.200** |
| | TITLE **USE OF FORCE** | | |

1.   Rinse their eyes with cool, free flowing water,
2.   Remove contaminated clothing, and
3.   Use soap and water to wash the affected areas.

D.   If the offender is uncooperative and/or restrained, employees may assist the offender with the decontamination process, which includes removing contaminated clothing.

    1.   Cool, free flowing water will be available, and the offender may choose to rinse his/her eyes (i.e., leaning into and out of the free flowing water).

    2.   Once secured in a cell or holding area, the offender will be instructed to continue the decontamination process.

    3.   If at any time the offender refuses to continue, employees will stop the decontamination process and document the refusal on DOC 21-424 Use of Force Report.

        a.   Only a health care provider may require an offender be decontaminated by force per Health Services decontamination procedures.

XII.   Inventory and Storage

A.   Appropriate quantities and varieties of OC, ██20██ less-lethal impact munitions, ██20██ and ██20██ will be maintained.  The inventory should contain an adequate variety of delivery systems for the possible types of incidents that could occur at the facility.

B.   Authorized delivery systems, ██20██ less-lethal impact munitions, ██20██ and ██20██ are listed on Authorized Equipment and Munitions (Attachment 1).

C.   [4-4199]  Each facility will plan for the secure storage and distribution of OC, ██20██ ██20██ less-lethal impact munitions, ██20██ and ██20██ so they are readily available.

    1.   The primary stock will be stored in the facility armory, maintained by the Armorer, and rotated as necessary depending on the manufacturer's recommended shelf life.

    2.   Superintendents may designate other secure locations for the storage of ██20██ OC, ██20██ and less-lethal impact munitions.  These locations will be ██20██

00700013
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 14 of 17 | NUMBER **DOC 410.200** |
| | TITLE **USE OF FORCE** | | |

       a.    OC aerosol products may be stored in other locations (e.g., ▇▇ [20] ▇▇▇▇▇▇▇▇▇▇ [20] ▇▇▇▇▇▇▇▇ for emergent issue and use. A sub-inventory must be maintained and the products secured and affixed with a security seal.

          1)    The supply will include the type/size employees may carry on post (i.e., ▇▇ [20] and the type/size used in pre-planned/ crowd control situations (i.e., ▇▇ [20] ).

          2)    Upon assuming post, employees will inspect and verify the inventory and ensure that the seals are intact.

    3.    Custody employees and authorized Specialty Team members will receive and transfer the on-post carry OC at shift change following the same procedures in place for other security related items (e.g., radios, keys, cuffs).

       a.    OC provided to employees to carry and use while on post will be secured in an approved OC carrier affixed to the duty belt.

       b.    Upon receipt, employees will inspect and verify that the OC canister and carrier appear to be in good working order.

       c.    Anytime the OC is used:

          1)    The OC canister will be removed from duty use and sent to the Armory for inspection,

          2)    The employee will be issued a new OC canister, and carrier if applicable,

          3)    The inventory will be updated, and

          4)    A report will be written in the Incident Management Reporting System (IMRS).

D.    The facility Emergency Management Coordinator will ensure that only approved ▇▇ [20] OC, ▇▇ [20] less-lethal impact munitions, ▇▇▇▇ [20] and ▇▇▇▇ [20] ▇▇▇▇▇▇ are authorized for purchase, storage, and use.

E.    OC, ▇▇ [20] less-lethal impact munitions, ▇▇▇▇ [20] and ▇▇▇▇ [20] ▇▇ [20] will be inventoried on the master inventory and on a perpetual inventory per DOC 410.240 Armory/Firearms Management. The inventory will ensure an accurate record of the disposition of all the above agents, including any outdated items.

00700014 Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| ***RESTRICTED*** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 15 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

1. Whenever any OC, ████ **20** less-lethal impact munitions, ████ **20** and/or ██████ **20** ████ are unaccounted for, a written report will be submitted to the Superintendent, with a courtesy copy to the Chief of Emergency Operations. An investigation will be conducted to determine the disposition.

F. Outdated OC, ███ **20** less-lethal impact munitions, ████ **20** and/or ███ **20** ████ **20** ████ will be stored separately from current stock, clearly identified as "not for duty use", and only used for training purposes.

G. The Assistant Secretary for Prisons may authorize purchase of any items for research and development purposes.

    1. Research and development items will be stored in facility Armories in a separate section and clearly marked as such. These items will only be used for training purposes.

XIII. Reporting

A. [4-4202] All employees directly involved in a use of force incident will complete a report of their involvement using DOC 21-424 Use of Force Report as soon as possible and before being relieved from duty.

B. The following documentation will be provided to the Shift Commander/Unit Supervisor:

    1. DOC 21-424 Use of Force Reports,
    2. All additional reports (e.g., medical, infractions, etc.),
    3. Pictures, with the name of photographer, offender name and number, time, date, and location written on each picture,
    4. Video recording(s), and
    5. Any additional supportive documentation.

C. After receiving and reviewing all use of force documentation, the Shift Commander/Unit Supervisor will:

    1. Initiate a report in IMRS per DOC 400.100 Incident and Significant Event Reporting.

    2. Review and sign all DOC 21-424 Use of Force Reports.

    3. Complete DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report.

00700015
Lewis v. Pugh

| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| | REVISION DATE 6/23/14 | PAGE NUMBER 16 of 17 | NUMBER **DOC 410.200** |
| | TITLE **USE OF FORCE** | | |

4. Generate a use of force packet and forward to the Superintendent through the chain of command, which will include at a minimum:

   a. DOC 21-424 Use of Force Reports,
   b. Medical Reports,
   c. Infraction Reports,
   d. Videos and Photographs, and
   e. DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report.

D. The Superintendent/designee will review all use of force incidents, considering the totality of the circumstances surrounding the use of force and conformance to Department policies. [4-4405] S/he will document the review by completing and signing DOC 21-426 Superintendent Use of Force Assessment.

E. The Superintendent may identify possible further actions, including recommending:

1. Internal Fact Finding or Critical Incident Review per DOC 400.110 Reporting and Reviewing Critical Incidents,
2. Headquarters Review,
3. Employee personnel actions (e.g., further investigation, corrective action, recognition),
4. Policy/procedural changes,
5. Modifications to the physical plant, and/or
6. Training needs.

F. All incident related reports and videos/photographs will be retained per the Records Retention Schedule.

G. The Emergency Operations Unit will randomly select a number of use of force incidents per month to review.

1. The Emergency Operations Unit will notify the Superintendent which use of force incident was selected, and request a copy of the use of force packet be sent for review.

2. After completing the use of force review, the Emergency Operations Unit will provide a written assessment to the Superintendent.

**DEFINITIONS:**

Words/terms appearing in this policy may be defined in the glossary section of the Emergency Management System Policy Manual.

PDU-40017 000025

00700016
Lewis v. Pugh



| | APPLICABILITY **PRISON** | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **POLICY** | REVISION DATE 6/23/14 | PAGE NUMBER 17 of 17 | NUMBER **DOC 410.200** |
| | TITLE | **USE OF FORCE** | |

**ATTACHMENTS:**

Authorized Equipment and Munitions (Attachment 1)
Force Option Guidelines (Attachment 2)
Use of Force Checklist (Attachment 3)
Use of Force Options (Attachment 4)

**DOC FORMS:**

DOC 21-424 Use of Force Report
DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report
DOC 21-426 Superintendent Use of Force Assessment

00700017
Lewis v. Pugh

**RESTRICTED**

## AUTHORIZED EQUIPMENT AND MUNITIONS



PDU-40017 000027

00700018
Lewis v. Pugh

**RESTRICTED**

## AUTHORIZED EQUIPMENT AND MUNITIONS



PDU-40017  000028

00700019
Lewis v. Pugh

PDU-40017 000029

RESTRICTED

# FORCE OPTION GUIDELINES

These are **guidelines** and each situation should be individually assessed for the appropriate intervention strategy.



| BEHAVIOR | THREAT ASSESSMENT | METHOD | REASON |
|---|---|---|---|
|  |  | 20 |  |

Rev. (6/14)

1 of 2

DOC 410.200 Attachment 2

PDU-40017 000030

RESTRICTED

## FORCE OPTION GUIDELINES

These are **guidelines** and each situation should be individually assessed for the appropriate intervention strategy.



| BEHAVIOR | THREAT ASSESSMENT | METHOD | REASON |
|---|---|---|---|
| | | 20 | |

Rev. (6/14)

2 of 2

DOC 410.200 Attachment 2

**CONFIDENTIAL**

## USE OF FORCE
### CHECKLIST

| Location: | Date: |
|---|---|
| Incident Commander: | Time: |

Required Actions:

| 4. **Resolve** | Time Started | Time Completed | Initial | N/A |
|---|---|---|---|---|
| a.  Verify information if unclear:<br>• Assess threat potential<br>• Review offender profile<br>• Consult with mental health provider if Seriously Mentally Ill Offender (SMIO) is involved<br>• Situation factors<br>• Reason/need for extraction<br>• Exhaust verbal options | | | | |
| b.  Develop an initial plan:<br>• Identify resolution method and obtain approval<br>• Assemble qualified employees, Quick Response Strike Team (QRST)/Emergency Response Team (ERT), Health Services<br>• Ensure medical file review consistent with force option<br>• Designate a team leader<br>• Assemble equipment | | | | |
| c.  **20** | | | | |

00700022
Lewis v. Pugh

CONFIDENTIAL

**USE OF FORCE**
**CHECKLIST**

| | | | | | |
|---|---|---|---|---|---|
| d. | **20** | | | | |
| e. | | | | | |
| f. | Video documentation (begin at the staging area away from the incident site) – Team Leader<br>• Introduction (e.g., name(s) and DOC number(s) of offenders involved, date and time, video operator's name)<br>• Reason(s) why force is necessary<br>• A description of the events leading up to the use of force and alternative actions already taken<br>• Name(s) of participating employee(s) and specific role of each | | | | |

00700023
Lewis v. Pugh

CONFIDENTIAL

## USE OF FORCE
### CHECKLIST

| | | | | |
|---|---|---|---|---|
| • Name of person authorizing the use of force<br>• Statement from health care practitioner concerning the use of OC ▮20▮ or ▮20▮ and any health risks noted<br>• If SMIO is involved, statement from mental health provider (or name and summary of his/her recommendation) | | | | |
| g. Specialty orders or instructions specific to the incident<br>• Post-incident video documentation<br>• Time, date, and location<br>• Offender(s) involved<br>• Employee(s) involved<br>• Description of the use of force<br>• Injuries noted<br>• Where the offender is located<br>• Current actions of the offender<br>• Statement to conclude videotaping | | | | |
| h. Specialty considerations for OC ▮20▮ use<br>• Approval for non-emergent cases<br>• Health services employee review offender health record<br>• Ensure employees have no medical contraindications that prohibit their involvement<br>• Ensure the disseminator is trained<br>• Prepare decontamination area<br>• Assess the need for evacuation of the area directly involved and those directly involved<br>• Shut down ventilation systems<br>• Provide supervisor with voice amplifier with respirator | | | | |

| **Transfer of Command (Optional)** | Time Started | Time Completed | Initial | N/A |
|---|---|---|---|---|
| a. Receive complete on-site briefing from Incident Commander<br>b. Observe off-going Incident Commander during a period of overlap<br>c. Announce time, date, and identity of new Incident Commander | | | | |

00700024
Lewis v. Pugh

**CONFIDENTIAL**

## USE OF FORCE
### CHECKLIST

Notes:

|  |
|--|
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

PDU-40017  000034

00700025
Lewis v. Pugh

PDU-40017 000035

DOC 410.200 Attachment 4



USE OF FORCE OPTIONS
PRISONS DIVISION

20

RESTRICTED

Rev (6/14)

00700026
Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center ***RESTRICTED*** *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 1 of 18 | **NUMBER** **WCC 410.200** |
| | TITLE | **USE OF FORCE** | |

**OM REVIEW/REVISION HISTORY**

| | |
|---|---|
| Effective: | 11/4/11 |
| Revised: | 12/13/11 |
| Revised: | 10/14/13 |
| Revised: | 8/14/14 |
| Revised: | 2/1/16 |
| Revised: | 6/24/16 |

**POLICY REVIEW/REVISION HISTORY**

| | |
|---|---|
| Effective: | 9/17/01 |
| Revised: | 5/16/06 |
| Revised: | 8/27/07 |
| Revised: | 1/13/09 |
| Revised: | 6/14/10 |
| Reviewed: | 11/15/10 |
| Revised: | 8/22/11 |
| Revised: | 10/14/13 |
| Revised: | 6/23/14 |

**SUMMARY OF REVISION/REVIEW:**

III.B., V.H.3.a., and VIII.A.5.a. - Added clarifying language
IX.A.1. & D.1.d., XII.C.3.c.4), and Section XIII. - Adjusted reporting requirements and added form usage
*I.D.1. - Identify emergency number*
*XII.C.2. - Identify other secure locations, if applicable*
*XII.C.2.a. - Identify other locations, if applicable, and specify process for check-out*

**APPROVED:**

| | |
|---|---|
| Signature on File | 6/22/2016 |
| **PAT GLEBE**, Superintendent Washington Corrections Center | Date Signed |



| | APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center *RESTRICTED* **EMERGENCY MANAGEMENT SYSTEM** OPERATIONAL MEMORANDUM | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 2 of 18 | **NUMBER** **WCC 410.200** |
| | TITLE | **USE OF FORCE** | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this *operational memorandum*; ACA 4-4090; ACA 4-4199; ACA 4-4202; ACA 4-4203; ACA 4-4206; ACA 4-4405; DOC 400.100 Incident and Significant Event Reporting; DOC 400.110 Reporting and Reviewing Critical Incidents; DOC 410.040 Incident Command System (ICS); DOC 410.230 Use of Deadly Force; DOC 410.235 Use of Force Training and Qualification; DOC 410.240 Armory/Firearms Management; DOC 610.010 Offender Consent for Health Care; DOC 630.540 Involuntary Antipsychotic Administration; DOC 890.090 Respirator Program; Records Retention Schedule

**OPERATIONAL MEMORANDUM:**

I.      The Department has established procedures for the use of force to control an offender.

II.     [4-4090] [4-4206]  The Department restricts the use of physical force to the following purposes, and then only after other reasonable force options have been attempted:

    A.      Protecting oneself, others, or property,
    B.      Preventing escape,
    C.      Maintaining or regaining control, and
    D.      Assisting in the involuntary administration of medication.

III.    [4-4206]  The use of force as punishment, personal abuse, harassment, or coercion is prohibited and will not be tolerated.

IV.     Force will not be used to inflict unnecessary pain and suffering or used maliciously for the purpose of causing injury to the offender.

**PROCEDURE:**

I.      General Requirements

    A.      Employees will exercise good judgment, discipline, caution, objective reasonableness, and restraint when using force.

    B.      The following criteria will be followed when the use of force is necessary:

        1.      All reasonable steps will be taken to de-escalate or prevent any incident that would likely result in the use of force,

        2.      Resistance must be evident,

00800002
Lewis v. Pugh



| | |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br>Washington Corrections Center<br>***RESTRICTED***<br>**EMERGENCY MANAGEMENT SYSTEM**<br>**OPERATIONAL**<br>**MEMORANDUM** | **APPLICABILITY**<br>**EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** |

| **REVISION DATE**<br>6/24/16 | **PAGE NUMBER**<br>3 of 18 | **NUMBER**<br>**WCC 410.200** |
|---|---|---|

| TITLE | |
|---|---|
| | **USE OF FORCE** |

       3.     The amount of force used must be directly related to the level of resistance and/or level of perceived threat presented by the offender(s), and

       4.     Per Use of Force Options (Attachment 4), only the amount of force reasonably necessary to resolve an incident will be used.

  C.    Employees will only be authorized to use force options which they have been trained and qualified to use unless there is an imminent threat of death or serious bodily injury to themselves or others.

       1.     When there is an imminent threat of death or threat of serious bodily injury to themselves or others, employees may use any available means to stop the action in the most reasonable manner possible.

  D.    Any employee, contract staff, or volunteer at the scene of an incident will provide assistance in the defense of another person by:

       1.     Calling ███ to report the incident and/or summoning custody employees to the scene,
       2.     Issuing a verbal order to stop the action, and/or
       3.     Assisting in controlling an offender.

II.    Emergent Situations

  A.    In the following emergent situations, employees will be authorized to use the amount of force reasonably necessary without prior approval:

       1.     Self-defense,
       2.     Defense of another,
       3.     Maintenance of security (e.g., escape, spread of a disturbance),
       4.     Prevention of a crime that would constitute a felony, and
       5.     Prevention of suicide or self-harm.

  B.    The Shift Commander/Unit Supervisor will be notified as soon as possible after an emergent use of force.

III.    Non-Emergent Situations

  A.    The Shift Commander will be notified before any force is used.  The Shift Commander will:

       1.     Confirm that an order was given to which the offender refused to comply,



| | STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY** **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|---|
| | Washington Corrections Center *RESTRICTED* *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 4 of 18 | **NUMBER** **WCC 410.200** |
| | | **TITLE** | **USE OF FORCE** | |

2.   Obtain delegated authority, if necessary, and

3.   Ensure completion of the following:

    a.   Resolution options are developed,

    b.   Trained and qualified employees are assembled,

    c.   In situations involving a known or suspected Seriously Mentally Ill Offender (SMIO), available mental health providers have been consulted (e.g., in person, via phone) for confrontation avoidance procedures,

    d.   Medical records are checked before authorizing the force options,

    e.   Appropriate Personal Protective Equipment (PPE) is provided and used.

B.   In situations where there are obvious language barriers and/or auditory limitations, interpreters or other non-traditional means of communication should be used when practical.

IV.   Use of Force Options

A.   Use of force should occur consistent with Use of Force Options (Attachment 4) and Force Option Guidelines (Attachment 2).

B.   The following are the available force options as indicated by Use of Force Options (Attachment 4):

1.
2.
3.
4.

5.
6.

C.   Employees will identify the level of perceived threat and/or level of resistance exhibited by the offender and apply the amount of force reasonably necessary using Use of Force Options (Attachment 4) as a guide.



| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center **RESTRICTED** **EMERGENCY MANAGEMENT SYSTEM** **OPERATIONAL MEMORANDUM** | **APPLICABILITY** **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** |

| **REVISION DATE** 6/24/16 | **PAGE NUMBER** 5 of 18 | **NUMBER** **WCC 410.200** |
|---|---|---|
| **TITLE** | **USE OF FORCE** | |

1. Actions should take place in the order listed on Use of Force Options (Attachment 4) unless dispensing with one or more options is necessary to immediately resolve the situation.

2. In all cases, employee presence and verbal intervention should occur before and continue throughout the use of force.

3. The amount of force reasonably necessary is determined by the exact nature of each situation and the totality of the circumstances facing the employee on the scene.

4. Force Option Guidelines (Attachment 2) will be reviewed with employees who may authorize a non-emergent use of force so they are familiar with the various levels of force and options available.

D. Passive Resistance Response

1. In a non-emergent situation where an offender displays passive resistance, any of the following may be used:

   a. Employees at the incident site, including Crisis Negotiators, to reason with the offender or order the offender to comply with specific directions.

   b. A video camera to record the actions of the offender(s).

   c. A show of force that includes additional employees and/or equipment.

2. If the above actions fail to gain the compliance of the offender(s), other progressive means of force may be initiated.

E. Active Resistance Response

1. For emergent or non-emergent situations, active resistance interventions include, but will not be limited to:

   a.

   b.

   c.

V. Oleoresin Capsicum (OC) Aerosol Products



STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS
Washington Corrections
Center

**RESTRICTED**
*EMERGENCY MANAGEMENT SYSTEM*
**OPERATIONAL
MEMORANDUM**

| APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|
| REVISION DATE 6/24/16 | PAGE NUMBER 6 of 18 | NUMBER **WCC 410.200** |
| TITLE **USE OF FORCE** | | |

A.  ███████████████ are required to carry OC on post.

    1.  ███████████████████████████████ and ███████████████████████████ are authorized to carry and use OC regardless of post and/or assignment.

B.  OC may be used without prior approval for self-defense and the defense of another.

C.  Employees authorized to use or supervise the use of OC must be trained and experience a one-time exposure.

D.  OC aerosols that are approved for use are Defense Technology's First Defense products.  No other aerosol products will be authorized without specific, written approval from the Assistant Secretary for Prisons.

    1.  For on-post carry, the ████████████████████████ is the only authorized product.

    2.  For employee OC training and exposures, aerosol products that are ████████ ███████████ should be used.

E.  OC aerosols products must be certified by the manufacturer as non-flammable and Electronic Discharge Weapon safe.  Authorized aerosol products are listed in Attachment 1.

F.  OC products delivered by means other than aerosol (i.e., ████████████████ ████████████████ are considered less-lethal impact munitions and are Intermediate Force options.

G.  Non-Emergent Use

    1.  Non-emergent (i.e., preplanned) use of OC aerosol products requires authorization from the Shift Commander/Unit Supervisor.

    2.  Non-emergent use of OC aerosol will only be authorized when, in the opinion of a health care practitioner, it would not pose a health risk to the offender(s).  A health care practitioner will review the offender health record against the product's Material Safety Data Sheet(s) to determine if a health risk exists.

    3.  Immediately after the incident has been resolved, employees will verify the condition and welfare of nearby offenders and others who may have been unintentionally exposed to OC aerosol spray.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center | APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | REVISION DATE 6/24/16 | PAGE NUMBER 7 of 18 | NUMBER **WCC 410.200** |
| *RESTRICTED* *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | TITLE **USE OF FORCE** | | |

H.  Emergent Use

1.  The Intensive Management Unit/Segregation Unit/Mental Health Unit/ Intensive Treatment Unit Sergeant may authorize the emergent use of OC aerosol products when an offender:

a.  Is ██████████████████████████████ ██████████████████ immediate use of OC may be appropriate.

b.  Is ██████████████████████████████ ██████████████ immediate use of OC may be appropriate.

c.  Has ████████████████████████████ etc., in which case the Sergeant will notify the Shift Commander/Unit Supervisor and receive delegated authority for desired action.

2.  Employees will be authorized to use OC aerosol products to defend themselves, other employees, or an offender(s) from an assault or imminent threat of assault if no other reasonable options are available.

a.  Precautions will be taken to avoid or minimize exposure to those uninvolved in the situation.

b.  The Shift Commander/Unit Supervisor must be notified as soon as possible after the emergent use of OC.

3.  All affected individuals will be removed from the scene as soon as possible after control is achieved.

a.  Copious amounts of cool, fresh water will be provided to cleanse the affected areas of the body.

b.  Medical personnel will evaluate all individuals affected.

VI.  Respirator Requirements

A.  Respirators (i.e., protective masks) will be worn by all employees/contract staff who might be exposed to OC or ██████ in non-emergent use of force situations.

1.  Employees/contract staff in posts and positions that require respirator use must meet the requirements outlined in DOC 890.090 Respirator Program.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center | APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | REVISION DATE 6/24/16 | PAGE NUMBER 8 of 18 | NUMBER **WCC 410.200** |
| ***RESTRICTED*** *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | TITLE | **USE OF FORCE** | |

B.   The Shift Commander will ensure that all extraction team members are certified in the Respirator Program.

    1.   Extraction team members include any employees that may be at the incident site (e.g., video camera operator, restraint/key control officer).

C.   Each facility will maintain a current roster of employees/contract staff trained and certified to use respirators.  Current lists will be located where protective masks are stored and in the Shift Commander's office.

VII.   Intermediate Force

A.   [4-4199]  The Shift Commander will obtain a delegation of authority from the Superintendent/Duty Officer before the deployment and use of intermediate force options.

B.   The Shift Commander may authorize the emergent use of intermediate force if delay of the delegation of authority by the Superintendent/Duty Officer may result in serious bodily injury to any person, jeopardize facility security, or lead to the escape of the offender(s).

C.   Intermediate force options include:

    1.
    2.
    3.
    4.
    5.

D.   Before intermediate force options are deployed and/or used, the following should occur:

    1.   Develop a plan to move non-involved offenders and those who voluntarily comply with orders to secure areas.

    2.   When circumstances permit and immediate security or safety breaches are not an issue, inform offender(s) that force will be used in the event of noncompliance with issued orders.

        a.   The offender(s) will be given the opportunity to voluntarily comply with the given orders before intermediate force options are used.

00800008
Lewis v. Pugh



| | |
|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br>Washington Corrections<br>Center<br>**RESTRICTED**<br>*EMERGENCY MANAGEMENT SYSTEM*<br>**OPERATIONAL<br>MEMORANDUM** | **APPLICABILITY**<br>**EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** |

| APPLICABILITY | | |
|---|---|---|
| **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
| REVISION DATE<br>6/24/16 | PAGE NUMBER<br>9 of 18 | NUMBER<br>**WCC 410.200** |
| TITLE<br>**USE OF FORCE** | | |

3. When time and circumstances are an issue, the Incident Commander may authorize the unannounced use of intermediate force options (e.g., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

VIII. Planning for the Use of Force

   A. Employees involved in planning the use of force will ensure:

      1. The quantity of OC, ▇▇▇▇ less-lethal impact munitions, ▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇ is appropriate for the incident.

      2. The method of dissemination to be used is consistent with the manufacturer's recommendations and the incident environment.

      3. Exit routes for employees and offenders are identified before the use of OC, ▇▇▇▇ less-lethal impact munitions, ▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇

      4. A medical review is conducted. In the event a health problem is found, the Incident Commander will be promptly notified and may consider an alternative tactic of controlling the offender(s), if circumstances permit.

      5. In situations involving a known or suspected SMIO, a mental health review will be conducted. The Incident Commander will consult with the designated mental health provider and consider the offender's likely response to use of force, recommendations, and potential risks to employees, the offender, and property.

         a. If an off-site mental health provider is consulted, the use of force report will include a statement regarding the provider's name and recommendation made.

   B. Application of OC ▇▇▇▇ less-lethal impact munitions, ▇▇▇▇ or ▇▇▇▇▇▇▇▇ will cease immediately upon the offender's compliance with given orders.

   C. If circumstances allow, air handling units should be shut down, windows opened, and fans readied for OC or ▇▇▇▇

   D. An assessment will be made of wind direction/ventilation patterns to determine cross-contamination and the need for evacuation of the areas that may be indirectly affected.



| | APPLICABILITY | EMPLOYEES/CONTRACT STAFF/VOLUNTEERS | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 10 of 18 | **NUMBER** **WCC 410.200** |
| | TITLE | **USE OF FORCE** | |

E.   In non-emergent situations, the Use of Force Checklist (Attachment 3) will be used.

F.   Preventing Positional Asphyxia

1.   Immediately following a physical altercation or when OC or ▇▇▇▇ is used, when deemed safe, employees/contract staff will ensure the offender is observed and kept in an upright position.

2.   Employees/contract staff will take precautions to ensure the offender has a clear unobstructed airway and is in a position that does not cause compression to the chest (i.e., kneeling, standing, sitting).

3.   Offenders who remain uncooperative will be transported in a manner that does not constrict expansion of the chest.  Offenders will be monitored by employees throughout the process of decontamination and placement in their final holding cell/area.

4.   A health services employee/contract staff will observe the offender until normal breathing is resumed.

IX.   Recording Use of Force

A.   Use of force will be video recorded unless there is no time to assemble equipment.

1.   If the incident is not video recorded, photographs of involved offender(s) will be taken.  DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report will be used to explain the reasons why the use of force is not video recorded.

B.   Video recording will begin as soon as possible and should be continuous to record as much of the incident as feasible.  The video camera will record the incident until the offender is placed in his/her final destination.

C.   The entire use of force incident will be video recorded, especially the offender(s) actions and employee response/tactics.  This includes situations where the offender may be naked, or become naked (e.g., clothes removed for decontamination process).  The camera will remain focused on the offender(s).

D.   The following format will be used for recording use of force:

1.   Away from the incident site:



STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

Washington Corrections Center

**RESTRICTED**

*EMERGENCY MANAGEMENT SYSTEM*

**OPERATIONAL MEMORANDUM**

| APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|
| REVISION DATE 6/24/16 | PAGE NUMBER 11 of 18 | NUMBER **WCC 410.200** |
| TITLE | **USE OF FORCE** | |

a. An introduction including the names(s) and DOC number(s) of offender(s) involved, the date and time, and the name of video operator,

b. A statement by the Team Leader indicating why the use of force is necessary (e.g., potential threat of injury to self or others, damaging property),

c. A chronological description of the events that led to the decision to authorize the use of force and any alternative actions to the use of force that have been taken,

d. The names of employees, and corresponding PPE identification number if applicable, participating in the use of force and specific instructions to each,

e. The name of the person authorizing the use of force,

f. When OC, ████ or EID use is planned, a statement from a health care practitioner concerning its use and any health risk noted,

g. In situations involving a known or suspected SMIO, a statement from the designated mental health provider on the offender's likely response to the use of force, recommendations, and potential risks to employees, the offender, and property, and

h. The off-site mental health provider name and recommendation, if one is consulted.

2. At the incident site:

a. The order issued to the offender(s) to comply, and the statement that noncompliance will result in the use of force,

   1) The offender(s) will be allowed an opportunity to comply.

   2) In situations involving a known or suspected SMIO, at the discretion of the Incident Commander, the on-site mental health provider will be allowed to communicate with the offender.

b. If the offender(s) does not comply, the direction to employees to apply the amount of force necessary,



| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS **Washington Corrections Center** *RESTRICTED* **EMERGENCY MANAGEMENT SYSTEM OPERATIONAL MEMORANDUM** | **APPLICABILITY** **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** |

| REVISION DATE | PAGE NUMBER | NUMBER |
|---|---|---|
| 6/24/16 | 12 of 18 | **WCC 410.200** |

| TITLE | |
|---|---|
| | **USE OF FORCE** |

        c.     The application of force, restraint of the offender(s), and decontamination process,

        d.     The medical examination of the offender(s) and a brief description of the offender's condition, and

        e.     The final placement of the offender(s) in the cell(s) and removal of restraints.

    3.     After-action summary away from the incident site:

        a.     The time, date, and location,
        b.     The offender(s) involved,
        c.     The employee(s) involved,
        d.     A description of the use of force,
        e.     Any injuries noted,
        f.     Where the offender is now located,
        g.     The offender's current behavior, and
        h.     A statement indicating the conclusion of the videotaping of the incident.

E.     Use of force videos will be confidential and will not be accessible to offenders. The videos will be reviewed by employees on a need to know basis or for training purposes.

F.     Photographs of any offender or employee injuries will be taken after the incident.

X.    Medical Evaluation

A.     A health care practitioner will be present during a use of force situation, if time and circumstances permit.

B.     [4-4203]  All employees and offender(s) should be assessed by a health care provider immediately following a determination that the situation is safe.

C.     All individuals injured in the incident will receive a medical examination and treatment.  At facilities where no health care provider is on duty, health services employees/contract staff may be called to the facility or employees/offender(s) may be transported to an outside medical facility.

    1.     Employees will be provided emergency first aid care.  If further treatment is required, the employee may be referred to or transported to a private health care provider of his/her choice.

00800012
Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | APPLICABILITY **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | REVISION DATE 6/24/16 | PAGE NUMBER 13 of 18 | NUMBER **WCC 410.200** |
| | TITLE **USE OF FORCE** | | |

2.    Force will not be used to complete offender medical assessments.  Any offender refusal of treatment will be handled per DOC 610.010 Offender Consent for Health Care.

XI.    Decontamination

A.    Decontamination of the offender(s) will start as soon as employees can safely proceed.  Clean-up of affected areas will be accomplished per the manufacturer's recommendations.

B.    Whenever OC or ▉▉▉ is used, employees will ensure that all affected individuals are removed from the area into fresh air and kept in an upright position until normal breathing returns.

C.    Once the offender is secured in a cell or holding area, the offender will be instructed to:

1.    Rinse their eyes with cool, free flowing water,
2.    Remove contaminated clothing, and
3.    Use soap and water to wash the affected areas.

D.    If the offender is uncooperative and/or restrained, employees may assist the offender with the decontamination process, which includes removing contaminated clothing.

1.    Cool, free flowing water will be available, and the offender may choose to rinse his/her eyes (i.e., leaning into and out of the free flowing water).

2.    Once secured in a cell or holding area, the offender will be instructed to continue the decontamination process.

3.    If at any time the offender refuses to continue, employees will stop the decontamination process and document the refusal on DOC 21-424 Use of Force Report.

a.    Only a health care provider may require an offender be decontaminated by force per Health Services decontamination procedures.

XII.    Inventory and Storage

A.    Appropriate quantities and varieties of OC, ▉▉▉▉ less-lethal impact munitions, ▉▉▉ and ▉▉▉▉▉▉▉▉▉ will be maintained.  The inventory



| | APPLICABILITY<br>**EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS<br>Washington Corrections<br>Center<br>***RESTRICTED***<br>**EMERGENCY MANAGEMENT SYSTEM**<br>**OPERATIONAL<br>MEMORANDUM** | **REVISION DATE**<br>6/24/16 | **PAGE NUMBER**<br>14 of 18 | **NUMBER**<br>**WCC 410.200** |
| | TITLE<br><br>**USE OF FORCE** | | |

should contain an adequate variety of delivery systems for the possible types of incidents that could occur at the facility.

B.     Authorized delivery systems, ██████ less-lethal impact munitions, ██████ and ██████ are listed on Authorized Equipment and Munitions (Attachment 1).

C.     [4-4199]  Each facility will plan for the secure storage and distribution of OC, ██████ less-lethal impact munitions, ██████ and ██████ so they are readily available.

1.     The primary stock will be stored in the facility armory, maintained by the Armorer, and rotated as necessary depending on the manufacturer's recommended shelf life.

2.     Superintendents may designate other secure locations for the storage of ██████ OC, ██████ and less-lethal impact munitions.  These locations will be ██████████

a.     OC aerosol products may be stored in other locations (e.g. ██████████for emergent issue and use.  A sub-inventory must be maintained and the products secured and affixed with a security seal.

1)     The supply will include the type/size employees may carry on post (i.e. ██████ and the type/size used in pre-planned/ crowd control situations (i.e., ██████)

2)     Upon assuming post, employees will inspect and verify the inventory and ensure that the seals are intact.

3)     *OC will be logged out/in at each location appropriately noting used or unused.*

4)     *The Armory Sergeant will replace/remove any used canister with new product.*

b.     *The Superintendent has authorized type/size OC to be stored in the following secured areas:*

1)     ██████████
2)     

00800014<br>Lewis v. Pugh



| | APPLICABILITY EMPLOYEES/CONTRACT STAFF/VOLUNTEERS | | |
| --- | --- | --- | --- |
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center **RESTRICTED** *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | REVISION DATE 6/24/16 | PAGE NUMBER 15 of 18 | NUMBER **WCC 410.200** |
| | TITLE **USE OF FORCE** | | |

      3) ████████████████████████████████
      4) ████████████████████████████████

      5) ████████████████████████████████
      6) ████████████████████████████████

  b.     *The Shift Commander,* ████████ *ay authorize pre-planned* ████████
████████████████████████████

      1) ████████████████████
      2) ████████████████████
      3) ████████████████████
      4) ████████████████████

3.     Custody employees and authorized Specialty Team members will receive and transfer the on-post carry OC at shift change following the same procedures in place for other security related items (e.g., radios, keys, cuffs).

    b.     OC provided to employees to carry and use while on post will be secured in an approved OC carrier affixed to the duty belt.

    c.     Upon receipt, employees will inspect and verify that the OC canister and carrier appear to be in good working order.

    d.     Anytime the OC is used:

      1)     The OC canister will be removed from duty use and sent to the Armory for inspection,

      2)     The employee will be issued a new OC canister, and carrier if applicable,

      3)     The inventory will be updated, and

      4)     A report will be written in the Incident Management Reporting System (IMRS).

00800015
Lewis v. Pugh



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center *RESTRICTED* *EMERGENCY MANAGEMENT SYSTEM* **OPERATIONAL MEMORANDUM** | **APPLICABILITY** **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 16 of 18 | **NUMBER** **WCC 410.200** |
| | **TITLE** **USE OF FORCE** | | |

D.     The facility Emergency Management Coordinator will ensure that only approved ████ OC, ████ less-lethal impact munitions, ████ and ████ are authorized for purchase, storage, and use.

E.     OC, ████ less-lethal impact munitions, ████ and ████ will be inventoried on the master inventory and on a perpetual inventory per DOC 410.240 Armory/Firearms Management.  The inventory will ensure an accurate record of the disposition of all the above agents, including any outdated items.

      2.     Whenever any OC, ████ less-lethal impact munitions, ████ and/or ████ are unaccounted for, a written report will be submitted to the Superintendent, with a courtesy copy to the Chief of Emergency Operations.  An investigation will be conducted to determine the disposition.

F.     Outdated OC, ████ less-lethal impact munitions, ████ and/or ████ will be stored separately from current stock, clearly identified as "not for duty use", and only used for training purposes.

G.     The Assistant Secretary for Prisons may authorize purchase of any items for research and development purposes.

      2.     Research and development items will be stored in facility Armories in a separate section and clearly marked as such.  These items will only be used for training purposes.

XIII.   Reporting

C.     [4-4202]  All employees directly involved in a use of force incident will complete a report of their involvement using DOC 21-424 Use of Force Report as soon as possible and before being relieved from duty.

D.     The following documentation will be provided to the Shift Commander/Unit Supervisor:

      2.     DOC 21-424 Use of Force Reports,
      3.     All additional reports (e.g., medical, infractions, etc.),
      4.     Pictures, with the name of photographer, offender name and number, time, date, and location written on each picture,
      5.     Video recording(s), and
      6.     Any additional supportive documentation.



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center *RESTRICTED* **EMERGENCY MANAGEMENT SYSTEM** **OPERATIONAL MEMORANDUM** | **APPLICABILITY** **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
|---|---|---|---|
| | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 17 of 18 | **NUMBER** **WCC 410.200** |
| | **TITLE** **USE OF FORCE** | | |

E.   After receiving and reviewing all use of force documentation, the Shift Commander/Unit Supervisor will:

2.   Initiate a report in IMRS per DOC 400.100 Incident and Significant Event Reporting.

3.   Review and sign all DOC 21-424 Use of Force Reports.

4.   Complete DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report.

5.   Generate a use of force packet and forward to the Superintendent through the chain of command, which will include at a minimum:

b.   DOC 21-424 Use of Force Reports,
c.   Medical Reports,
d.   Infraction Reports,
e.   Videos and Photographs, and
f.   DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report.

F.   The Superintendent/designee will review all use of force incidents, considering the totality of the circumstances surrounding the use of force and conformance to Department policies. [4-4405] S/he will document the review by completing and signing DOC 21-426 Superintendent Use of Force Assessment.

G.   The Superintendent may identify possible further actions, including recommending:

2.   Internal Fact Finding or Critical Incident Review per DOC 400.110 Reporting and Reviewing Critical Incidents,
3.   Headquarters Review,
4.   Employee personnel actions (e.g., further investigation, corrective action, recognition),
5.   Policy/procedural changes,
6.   Modifications to the physical plant, and/or
7.   Training needs.

H.   All incident related reports and videos/photographs will be retained per the Records Retention Schedule.

I.   The Emergency Operations Unit will randomly select a number of use of force incidents per month to review.

00800017
Lewis v. Pugh



| | APPLICABILITY | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS Washington Corrections Center *RESTRICTED* **EMERGENCY MANAGEMENT SYSTEM** **OPERATIONAL MEMORANDUM** | **EMPLOYEES/CONTRACT STAFF/VOLUNTEERS** | | |
| | **REVISION DATE** 6/24/16 | **PAGE NUMBER** 18 of 18 | **NUMBER** **WCC 410.200** |
| | **TITLE** | **USE OF FORCE** | |

2.      The Emergency Operations Unit will notify the Superintendent which use of force incident was selected, and request a copy of the use of force packet be sent for review.

3.      After completing the use of force review, the Emergency Operations Unit will provide a written assessment to the Superintendent.

**DEFINITIONS:**

Words/terms appearing in this *operational memorandum* may be defined in the glossary section of the Emergency Management System Policy Manual.

**ATTACHMENTS:**

Authorized Equipment and Munitions (Attachment 1)
Force Option Guidelines (Attachment 2)
Use of Force Checklist (Attachment 3)
Use of Force Options (Attachment 4)

**FORMS:**

DOC 21-424 Use of Force Report
DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report
DOC 21-426 Superintendent Use of Force Assessment

00800018
Lewis v. Pugh

RESTRICTED

## AUTHORIZED EQUIPMENT AND MUNITIONS



00800019
Lewis v. Pugh

RESTRICTED

## AUTHORIZED EQUIPMENT AND MUNITIONS



00800020
Lewis v. Pugh

RESTRICTED

# FORCE OPTION GUIDELINES

These are **guidelines** and each situation should be individually assessed for the appropriate intervention strategy.

| BEHAVIOR | THREAT ASSESSMENT | METHOD | REASON |
|---|---|---|---|
|  |  |  |  |

Rev. (6/16)

1 of 2

WCC 410.200 Attachment 2

00800021
Lewis v. Pugh

RESTRICTED

## FORCE OPTION GUIDELINES

These are **guidelines** and each situation should be individually assessed for the appropriate intervention strategy.

| BEHAVIOR | THREAT ASSESSMENT | METHOD | REASON |
|---|---|---|---|
| | | | |

Rev. (6/16)

2 of 2

WCC 410.200 Attachment 2

00800022
Lewis v. Pugh

**CONFIDENTIAL**

# USE OF FORCE
## CHECKLIST

| Location: | Date: |
|---|---|
| Incident Commander: | Time: |

Required Actions:

| 4.  Resolve | Time Started | Time Completed | Initial | N/A |
|---|---|---|---|---|
| a.  Verify information if unclear:<br>• Assess threat potential<br>• Review offender profile<br>• Consult with mental health provider if Seriously Mentally Ill Offender (SMIO) is involved<br>• Situation factors<br>• Reason/need for extraction<br>• Exhaust verbal options | | | | |
| b.  Develop an initial plan:<br>• Identify resolution method and obtain approval<br>• Assemble qualified employees, Quick Response Strike Team (QRST)/Emergency Response Team (ERT), Health Services<br>• Ensure medical file review consistent with force option<br>• Designate a team leader<br>• Assemble equipment | | | | |
| c.  ███████████████████████ | | | | |

00800023
Lewis v. Pugh

**CONFIDENTIAL**

# USE OF FORCE
## CHECKLIST

| | | | | | |
|---|---|---|---|---|---|
| d. | ████████████████████ | | | | |
| e. | ████████████████████ | | | | |
| f. | Video documentation (begin at the staging area away from the incident site) – Team Leader<br>• Introduction (e.g., name(s) and DOC number(s) of offenders involved, date and time, video operator's name)<br>• Reason(s) why force is necessary<br>• A description of the events leading up to the use of force and alternative actions already taken<br>• Name(s) of participating employee(s) and specific role of each | | | | |

00800024
Lewis v. Pugh

**CONFIDENTIAL**

# USE OF FORCE
## CHECKLIST

| | Time Started | Time Completed | Initial | N/A |
|---|---|---|---|---|
| • Name of person authorizing the use of force<br>• Statement from health care practitioner concerning the use of OC ▆ or EID and any health risks noted<br>• If SMIO is involved, statement from mental health provider (or name and summary of his/her recommendation) | | | | |
| g. Specialty orders or instructions specific to the incident<br>• Post-incident video documentation<br>• Time, date, and location<br>• Offender(s) involved<br>• Employee(s) involved<br>• Description of the use of force<br>• Injuries noted<br>• Where the offender is located<br>• Current actions of the offender<br>• Statement to conclude videotaping | | | | |
| h. Specialty considerations for OC/▆ use<br>• Approval for non-emergent cases<br>• Health services employee review offender health record<br>• Ensure employees have no medical contraindications that prohibit their involvement<br>• Ensure the disseminator is trained<br>• Prepare decontamination area<br>• Assess the need for evacuation of the area directly involved and those directly involved<br>• Shut down ventilation systems<br>• Provide supervisor with voice amplifier with respirator | | | | |
| **Transfer of Command (Optional)** | **Time Started** | **Time Completed** | **Initial** | **N/A** |
| a. Receive complete on-site briefing from Incident Commander<br>b. Observe off-going Incident Commander during a period of overlap<br>c. Announce time, date, and identity of new Incident Commander | | | | |

00800025
Lewis v. Pugh

**CONFIDENTIAL**

# USE OF FORCE
## CHECKLIST

Notes:

00800026
Lewis v. Pugh

Attachment 4

**USE OF FORCE OPTIONS**
**PRISONS DIVISION**

**RESTRICTED**

Rev. (6/16)

00800027
Lewis v. Pugh

| Department of Corrections |
|---|
| **Defensive Tactics Manual** |
| v1.6 2016 |

**Title:  Defensive Tactics Training Manual**

- **Target Audience:**
  - Department of Corrections employees requiring use of force training
  - Number of participants:  2  Minimum  24  Maximum
- **Required Instructor ratio:**
  - 2 instructors for 2 to 12 students.
  - 3 Instructors for 13 to 18 students.
  - 4 Instructors for 18 to 24 students.

## COURSE PERSPECTIVE/PURPOSE:

- Use of Force and Use of Restraints Policy review
- Risk assessments
- Application of Restraints
- Team Tactics
- Proficiency assessment
- Written Test
- Defensive Tactics:
  - Control Tactics
  - Impedance Tactics
  - Officer Survival – ███████████████████████
  - Equipment Retention – ███████████████████

## PERFORMANCE OBJECTIVE(S):

*During individual and group exercises performed in a classroom setting and/or on padded floor mats, participants will be able to:*
- Pass a written test that reflects knowledge of DOC policy, and principles of force application.
- Demonstrate proficiency and pass practical assessments on Control Tactics.
  - Prisons Only for the above to
- Demonstrate application of wrist, waist, and ankle restraints.
- Participate in the physical control and restraint of compliant and non-complaint offender.
- Demonstrate Impedance Tactics that include
- Demonstrate ██████████████ defensive tactics
- Demonstrate ██████████████ tactics
- Demonstrate Equipment Retentions skills and tactics.
- Demonstrate ability to activate ███████████ feature
- Demonstrate ████████████████ defense

01400012
Lewis v. Pugh

| Department of Corrections |
|---|
| **Defensive Tactics Manual** |
| v1.6 2016 |

## EVALUATION PROCEDURES:

- – Use of Force written test. 70% to pass.
- – Instructor observation of classroom and participation in physical activities
- – In accordance with DOC standards, Instructors will assess for:
  - Proficiency – performance of technique to the standard.
  - Fluency – performing technique without unnecessary pause or hesitations flowing from beginning to ending.
- – Objective rating criteria is pre-identified for primary techniques selected for training.

## EQUIPMENT AND SUPPLIES NEEDED:

[X]  Flipchart stands and pads
[X]  Computer or Laptop with Power point
[X]  Overhead projector and screen
[X]  Video player and monitor
[X]  First Aid Kit
[X]  Disinfectant, Towels, mops, and fans
[X]  Blood and Body Spill Clean Up Kit

## INSTRUCTOR MATERIALS:

Class roster
Department of Corrections Defensive Tactics Manual
Instructor Guides
Use of Force Policy
Practical Evaluation sheets
Written Test
Written Test Key
Injury Reports – DOC 03-133
Duty Belt for students that do not bring one
Handcuffs, Handcuff case, and Key
███████████████████████

## STUDENT MATERIALS:

Duty Belt

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

2

01400013
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## REFERENCES:

CJTC/DOC Defensive Tactics Instructor Manuals
CJTC/DOC Ground Survival Defensive Tactics Instructor Manuals
CJTC/DOC Firearms Retention Defensive Tactics Instructor Manuals
National Law Enforcement Training Center ███████████ Restraint
Instructor Manual (for ███████████ defense only)
<span style="color:red">Physical Conflict Resolution Manual – Balance Control</span>
Tactical Verbal Skills Instructor Manual
DOC Use of Restraints policy, Use of Force policy, and Use of Deadly Force Policy

## INSTRUCTOR SAFETY INFORMATION:

1. Instructor diligence in controlling the speed, intensity, and activity of the class is of utmost importance.  All techniques will be practiced and demonstrated for proficiency rating at no more than **Half Speed and LESS.**
2. Balancing employee safety with the need to practice force application requires annually certified instructors.
3. Warm up sessions will be used to allow participants to physically warm up and instructors to observe for appropriate range of motion abilities by participants.
4. Provide First Aid and report Injuries to the Facility Performance Coordinator and or Regional Training Manager.
5. Complete all required documentation:
   • Rosters - Rating Sheet – Accident/Injury and Incident Reports
6. Instructor **should not** have techniques performed on them by students.
7. Instructor will demonstrate technique at the safe speed and intensity, not to exceed half-speed.  **Drills will be performed at SLOW motions speeds.**
8. <span style="color:red">**No sparring or fight for life revolutions are allowed.**</span>

## CLASS ROOM/ KNOWLEDGE SEGMENT:

– Use of Force policy review
   • Interactive use of force power point/policy review
– Risk Assessment
   • Considerations for engagement
   • Safety
– Mental/emotional preparation
   • Prior to situation
   • Condition mind for response
– Written Test

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

3

01400014
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

### v1.6 2016

## INDIVIDUAL TECHNIQUE DEVELOPMENT:

### Physical Warm-ups and stretching

– Instructor assessment of student Range of motion
– Preparation for physical activity
– **Teaching staff how to fall properly forward and backwards during warm up**
  ▪ **SLOW with Low repetitions – Breath control**
  ▪ **5 minutes of continuous movement**

**Core Movement Principles** – Practice in all Defensive Tactics training
– Breathing
– Relaxation
– Structure
– Mobility (constant movement)

**Core Mindset Principles** -
– Goals
– Imagery
– Self-Talk
– Emotional Control

**Relative positioning principles – Individual and Team Tactics**

– Distance/response time relationship
– Action/ Reaction relationship
– Reactionary Gap
– Ranges
– **Balance Disruption/5 Story building concept** – ▮▮▮▮▮▮▮concept
  o Use of ▮▮▮▮▮▮▮movement
  o Unlocking rigid resistance

### Entry to Proper Escort Position

– ▮▮▮▮▮▮▮
– ▮▮▮▮▮▮▮
– ▮▮▮▮▮▮▮
– **Drill on movement concepts – Move with movement and or redirect movement**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

4

01400015
Lewis v. Pugh

| Department of Corrections |
| --- |
| **Defensive Tactics Manual** |

| **INDIVIDUAL TECHNIQUE DEVELOPMENT:** |
| --- |

███████████
– ██████████ Walk around - Step over
– Move what you can – ██████████████

**Application of Restraints**
– Wrist
– Waist with transition to and from wrist
– Ankle
– Flex restraints
– Ripp restraints (if applicable)
– <span style="color:red">**WRAP Restraint**</span>
– Removal of each listed above

**Control Tactics**
• ██████████████**Takedown** (required and rated)
   – ██████████████
   – ███████████████████shown (not rated)
• **Figure 4 and or Over The Shoulder Take down** (required and rated)
   – ████████Failure
• ████████**lock** (time permitting – not rated)
• ████████████ required and rated)
   – ███████████
   – ███████████
• ██████████████**Lock** (required and rated)
   – Application to cuffing
   – █████████take down (not rated)
   – ███████████████ (not rated)

**Impedance Tactics (not rated)**
   – ████████████████
   – ████████████████
   – ████████████████
   – ████████████████
   – ████████████████

01400016
Lewis v. Pugh

| Department of Corrections |
|---|
| **Defensive Tactics Manual** |
| v1.6 2016 |

## INDIVIDUAL TECHNIQUE DEVELOPMENT:

**Officer Survival –** ███████████████████ **defense (not rated)**

  – ████████████████████████
  – ████████████████████████

**Equipment Retention**
  – ████████████████
  – ████████████████
  – ████████████████

**Emergent and non-emergent use of force – Officer Judgment**
  – Self Defense
  – Targeting
  – Force Options

## TEAM TACTICS:

**Team Concepts in force application emphasize staff safety:**
- Use of Force principles from a team perspective – Control to cuffing
- Relative positioning (demonstration and practice)
- SLOW – drills and practice
  – Entry to Control or Takedown to cuffing (non-compliant)
    . From standing – take offender down to ██████████
    . Restraint Application
    . Searching
    . Assist restrained offender to feet from cuffed prone position

- Escorting offender – Single and multiple officers – Balance Control

  – Restrained offender takedown to knees with ████████ application to apply Ankle restraints and or spit shield.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

6

01400017
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

### v1.6 2016

## STANDARDS, RULES AND EXPECTATIONS:

### Students will:

- Remain professional at all times.
- Participating fully is defined as:
  - Following the instructions of the Defensive Tactics  Instructor (DTI)
  - Performing (on other class participants) repetitions of all the techniques
  - Have techniques performed on (by other class participants)
  - Demonstrate techniques while a DTI evaluates your performance
  - Receive feedback from DTI regarding proficiency performing drills and techniques

- Dress appropriately for Defensive Tactics training. Long sleeves and sweat pants recommended.
- Perform or practice only techniques and principles trained by DTI.
- Report injuries to DTI immediately.
- Contact the FPC or RTM **prior to day of training** requesting to be excused from DT training and or to be rescheduled if unable to participate fully.
- Not allowed to observe only for attendance and passing credit.

## KEY POINTS:

- Force may be necessary to gain control of resistive/non-compliant offender(s).
- The use of force requires staff to exercise discipline, caution, restraint and good judgment.
- Reasonable steps shall be taken to reduce and prevent any incident or necessity for the use of force.
- All staff are authorized to apply reasonable force when there are no reasonable alternatives in an emergent situation.
- Control tactics may be necessary to physically control an offender through ████████ ████████ and ████████████ To restraint non-compliant offender(s).
- Impedance Tactics are designed to stop or impede an offender, ████████████████
- ████████████████ skills provide officers with the ability ████████████████ ████████████ aggressive/assaultive offender.
- ████████████████ defensive skills provide officers the ability to ████████████ ████████
- Equipment Retention skills are required for an officer to retain their ████████████ equipment.
- ████████████████████████████████
- Request assistance or ████████████████ when you can.

01400018
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

## USE OF FORCE:

In the performance of your duties it will become necessary to use force to gain compliance and or control of an offender or protect yourself or others from injury or death.  Predicting when, where, and how force will be used is not possible.  Preparing yourself for that encounter or situation is possible.  To become proficient at these skills, it will take your full participation in class and your personal preparation for that encounter.

### Purpose:

The techniques trained in class are legally defensible and they lend themselves to variations based on the situation and the physical ability of staff.   Provides a foundation of Defensive Tactics skills that will allow staff to control and restrain offenders and defend against assaultive/aggressive attacks.  All techniques are designed with tactical, medical, legal, and instructional considerations.

### Performance Objective:

1. Pass a written test that reflects knowledge of DOC policy, and principles of force application.
2. Pass Practical test on select CT techniques.

### Facts and Standards:

1. All techniques are legally, medically, and tactically sound.  They are teachable with Standards established by the Criminal Justice Training Commission, Law Enforcement and the Department of Corrections.
2. Control Tactics, Impedance Tactics, Officer Survival, and Equipment Retention are all considered Defensive Tactics.
3. Skill application will be controlled and evaluated for:

   - Proficient demonstration of individual techniques.
   - Team member roles in the approach, control, restraint, and escort of offenders.

### Use of Force Policy Review

The resistant/aggression of an offender determines the force options applied and or the officer's response to the resistance or non-compliance.  Staff need to recognize when to employ higher force options as well as when to deescalate to lower force options based on the actions and or resistance of the offender.

**Self-defense** involves any and all means of self-protection or of another. ▮▮▮▮▮▮ is critical during self-defense. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The well being of the attacker is considered, but will not deter the necessary actions to sustain life by any and all means. This may cause death or serious injury should a life be in jeopardy.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

8

01400019
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

**Control/Impedance Tactics** (CIT) have been developed to maximize staff control while minimizing injury to both staff and offender.  Additionally, these techniques and principles place responsibility on the professional to protect others as well as defend themselves. Staff should use only that force which is necessary and reasonable to gain compliance and or control of the offender.

**Control Tactics** techniques are designed to maximize control and minimizing injuries to both staff and offenders.

**Impedance Tactics** techniques are designed to impede an attack or aggressive act. Ultimately allowing for application of Control Tactics or disengagement.

**Officer Survival/Self Defense** techniques are designed to allow the officer to survive attacks ███████████████████████████████████████

**Equipment Retention** is the use of ██████████████████ designed for an officer to retain their ███████████████ equipment when an aggressor is attempting to take it away without consent.

## USE OF FORCE:

Staff make decisions based on the totality of circumstances, whether it is emergent or non-emergent.  Non-emergent situations allow for time to notify (Prisons) the Shift Supervisor/requesting assistance.  Emergent situations require immediate actions to avert physical harm, death, escape, and or commission of a felony. Staff are authorized to use force without prior approval when there is no time and the threat is imminent during:
• Self Defense
• Defense of another
• Maintenance of Security (e.g., ███████████████████████████)
• Prevention of a crime that constitutes a felony and
• Prevention of suicide or self-mutilation

**Use of Force Options**

• Visual Aid of levels of resistance and force options (policy).
• Staff should focus on using reasonable necessary force based on the actions and circumstances present.

**Passive Resistance:**  Offender will not move or "come along".

• **Response**
  – ████████████████████████████████████████
  – ████████████████████████████████████████
  – ████████████████████████████████████████
  – ████████████████████████████████████████

01400020<br>Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## USE OF FORCE:

**Active Resistance:** Offender/aggressor who is trying to defeat your physical control or assault you or others assisting in carrying out your duties.

- **Static Resistance: Offender may be verbal or non-verbal**
  - Does not comply with verbal orders and directions of staff.
  - The offender tenses up in an isometric muscular effort to resist staff.
  - Making the application of restraints difficult.

- **Egressive behavior:**
  - Pulls away from control and escort techniques.
  - Physically attempts to escape control of staff.

- **Aggressive/assaultive behavior:**
  - Postures with attack indicators, verbal threats and or resistance may be present.
  - Moves towards staff in an aggressive manner.
  - Grabs a hold of staff in attempt to defeat control and restraint techniques.
  - Attacks indicators verbally stating intent to resist or harm.
  - Attacks resulting in assault
  - Strikes with or without weapons

- **Deadly Threat**
  - Actions/intent of the aggressor creates the risk of serious bodily injury and or death.
  - Can be with or without a weapon.

**Force Options:**
- **Presence**
  - Attempt to reason with the offender or order the offender to comply with specific directions.

- **Verbal Tactics**
- **Control Tactics**
- **Impedance Tactics**

- 

- **Electronic Immobilization Devices**


Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

10

01400021
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

**USE OF FORCE:**

– **Intermediate Force**



– **Deadly Force**

**The use of force as punishment, personal abuse, harassment, or coercion is not authorized and will not be tolerated.**

**DOC Definition of Use of Force:**

Physical use of any weapon, implement, or body movement to cause an offender to respond to employee orders.

**Reporting**

- All staff directly involved in a use of force incident will complete a report of the incident, as soon as possible, before being relieved from duty.
- IMRS and 21-425 will be completed by the Shift Commander.
- DOC 21-424 Use of Force Report will be completed everyone using force.
- All employees involved will state facts of the entire incident in an Incident Report.
- State specific details of technique and or tactic **you** used in Use of Force report.

Emergency Operations Unit<br>Washington State Department of Corrections 2015<br>Prisons Division Defensive Tactics Manual v1.6

11

01400022<br>Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## RISK ASSESSMENT/THREAT INDICATORS:

Early observation of warning signs can prepare staff to respond quickly to a possible threats, and perhaps prevent an attack or assault.  If the threat is imminent, good observation skills may provide staff the ability to recognize and respond. ████████████ or requesting assistance.

– Early warning signs and indicators include but not limited to:



**Evaluate environmental and circumstantial factors:**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

12

01400023
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

### v1.6 2016

### RISK ASSESSMENT/THREAT INDICATORS:

- Clear and remove uninvolved offenders if possible, or remove disruptive offender.

- Use reasonable force when sufficient staff is present.

- **360 degree awareness –** avoid tunnel vision and getting distracted from being aware of your surroundings at all times.

**Emergency Communications – Safety first – do not hesitate to request help**



### CONTROL TACTICS Concepts:

Physical fitness and having an appropriate mindset will enhance your ability and safety as well as the safety of your team during the use of force.

1. **Distances appropriate for implements**



2. **Balance Disruption –**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

13

01400024
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|
| v1.6 2016 |

3. **Pain Compliance** –

██████████████████████████████████████

4. **Sensory Overloads/Distractions** –

██████████████████████████████████████

5. **Body Mechanics** –

██████████████████████████████████████

6. **Angles of attack** –

██████████████████████████████████████

7. **Position of advantage/Tactical mindset** –

██████████████████████████████████████


**Control Tactics GROUND RULES:**

Instructors will determine if anyone in the class has any injuries, prior to beginning warm up session.

Warm up exercises helps identify limitations and warms joints and muscles for exercise.

Review class ground rules:

- Safety first
- No Horseplay
- All injuries are required to be reported to Captains Office and or FPC.
- No unnecessary conversations.
- No physical/practicing contact during breaks, except for instructor guided sessions.
- All students will participate in all activities, unless otherwise directed by instructor.
- Offenders are not the enemy and will not be referred to by any demeaning or derogatory names.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

14

01400025
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## SAFETY:

- Brief Emergency Plan – who is doing what if emergency occurs during training.
- Brief and demonstrate acceptable SPEED and INTENSITY for all practice and drills.
- **Demonstrate learning speed and set standard for practice and testing.**
- Instructors are responsible for controlling the speed and intensity that staff perform all techniques.
- Students will be rotated to practice with other students.
- All techniques will be performed and tested at <u>**Half Speed**</u> or LESS.
- Emphasize **fluency and proficiency.**
- Instructors will take necessary steps to ensure the safety of all staff during training.
- Instructors need to continuously observe for possible injuries. (i.e. limited range of motion, favoring of limb or back.)  Instructors should assess students ability to participate during the warm ups and stretches.
- During the NEW 5 minute warm staff will practice falling to the ground and getting back up to the standing and sitting positions.
- Establish the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ensure students know the importance of this ▮▮▮▮▮▮▮▮

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

15

01400026
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## WARM UP EXERCISES:

| Type | Examples | Time |
|---|---|---|
| Cardio<br><br>and<br><br>Large Joints | • Joint rotations<br>　○ Feet, ankles, knees, hips, shoulders/arms, and neck<br>• Core Exercises: Slow-with low repetitions – continuous 5 minutes<br>　○ Standing to Push-up roll over to back sit up stand<br>　○ Leg raises<br>　○ Squats<br>Student determines the intensity and the exercise to sustain continuous movement for 5 minutes. | 10 minutes |
| Peri-Spinal & Stretching | • Neck Rotations and Stretch<br>• Shoulder Shrugs<br>• Shoulder-arm Rotations<br>• Shoulder Stretch<br>　○ Single  elbow across the chest<br>　○ Single elbow behind the head<br>　○ Double elbow behind the head<br>• Wrist-Rotations & Wrist Stretch<br>• Standing straight knee stretch<br>• Reverse & forward crunches<br>• Quad ground Stretch<br>• Ground straight knee stretch<br>• Ground splits stretch<br>• Ground butterfly stretch | 10 minutes |

Allow students to stretch on their own for 2 minutes.  Some may have additional stretches they have been advised to perform prior to exercise.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

16

01400027
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## RANGES

Always remaining in a position of advantage can be tasking depending on the post assigned.  If you are not in a position of advantage you can be seriously injured. Long, Medium, and Short ranges.  Do not confuse ranges with reactionary gap.





Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

17

01400028
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

### v1.6 2016

## ENTRY TO ESCORT POSITION



The offender was directed to turn around and to stand for search and he or she did not comply or the decision has been made for the officer to safely obtain the Escort Position in order to establish a position of control to initiate a variety of control, restraint, and impedance tactics.



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

18

01400029
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

### v1.6 2016

## ENTRY TO ESCORT POSITION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

19

01400030
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**ENTRY TO ESCORT POSITION:** ███████ **drill**

01400031
Lewis v. Pugh

| Department of Corrections |
|:---:|
| **Defensive Tactics Manual** |
| v1.6 2016 |

**ENTRY TO ESCORT POSITION :** ████████ drill

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

21

01400032
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



01400033
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

23

01400034
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

24

01400035
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

### v1.6 2016

## Concepts and Principles of TAKE DOWNS:

You may find it necessary to take and offender to the ground to control and restrain. Ultimately utilizing █████████████████████████████████████████ ████████████████████████████████

All takedown techniques should lead to the offender lying on their belly ████████████ ██████████████████████ during the application of restraints for the safety of staff involved.

There are three simple principles or rules to observe when performing takedown techniques.

- ████████████████████████████
- ████████████████████████████
- ████████████████████████████

1. ████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

2. ██████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

3. ████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

25

01400036
Lewis v. Pugh

# Department of Corrections
## Defensive Tactics Manual

v1.6 2016

TAKE DOWN: **TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400037
Lewis v. Pugh

| Department of Corrections |
|---|
| **Defensive Tactics Manual** |
| v1.6 2016 |

 **TAKE DOWN: continued**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

27

01400038
Lewis v. Pugh

## [redacted] TAKE DOWN: continued

[redacted]

[redacted]

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**TAKEDOWN:** continued **TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

29

01400040
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

TAKEDOWN:                                    continued   **TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

30

01400041
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

TAKEDOWN: continued **TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

31

01400042
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

TAKEDOWN:       continued





01400043
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

: TIME PERMITTING – **NOT TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

33

01400044
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

TESTED:                    take down  NOT TESTED



01400045
Lewis v. Pugh

| Department of Corrections |
|---|
| **Defensive Tactics Manual** |
| v1.6 2016 |

: to             take down             **NOT TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

35

01400046
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
| --- |
| v1.6 2016 |

████████ **TACTICS:**



It is important to couple the techniques with verbal commands.  Give clear verbal commands. Give the offender something to think about/process as the technique is applied.  Commands may be loud ██████████████████████ Offender needs to understand non-compliance will cause the application or continuance of ████████ ██████████ techniques.

It is imperative that the officer know how, and when, to give the offender ████████ ████████████████████████████████████████████████████████████████████████

████████████ **Series 3 steps:**

Step process for ██████████ are:
- ████████████████████████████████████
- ████████████████████████████████████
- ████████████████████████████████████

████████████████████████████████████████████████████████

01400047
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
| --- |
| v1.6 2016 |

## BASIC CONCEPTS:

The ████████ series are all positions from ████████   ████████ always consist of four principles.



| ████████ | **TESTED** |
| --- | --- |

**Verbalize, "Stop! Do not resist."**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

37

01400048
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|
| v1.6 2016 |



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

38

01400049
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

**TESTED**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

39

01400050
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**PRINCIPLES OF HANDCUFFING: <u>Refer to TASK MAP on application of all restraints</u>**
**WRIST RESTRAINTS:**

**APPLICATION OF RESTRAINTS:**

When it is time to handcuff, the primary principle of handcuffing is to control first, then handcuff.
The primary principle is to handcuff first and search later.

**in the applications of :**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

40

01400051
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## PURPOSE OF HANDCUFFING:

Handcuffs serve as a <u>temporary restraint</u>.
They are used to:
1. Prevent individual from harming self or other.
2. Prevent Escape.
3. Prevent the destruction / concealment of evidence or contraband.

Keep in mind that a resistive offender can still use their feet and body should they choose to do so.

Refer to Use of Restraints Policy 420.250 and RCW 72.09.015 for use on pregnant offender

Cautions to consider when using handcuffs:
1. An offender in custody is always that officer's responsibility.
2. Handcuffs are a temporary restraint.
3. Handcuffs do not immobilize offenders.
4. Do not handcuff persons to stationary objects.
5. Always handcuff behind the back unless you are restraining a pregnant female.
6. Avoid handcuffing over clothing.
7. 
8. 
9. 

## TACTICAL CONSIDERATIONS:



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

41

01400052
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## LEVELS OF HANDCUFFING:

Compliant          Offender complies with verbal directions of Officer
Combative          Offender is placed in restraints through use of force
Coercive           Offender is persuaded to comply with use of ███████████

## APPLYING HANDCUFFS: Team Tactics Standing

The majority of use of force situations may involve multiple staff. Involved staff will generally be participating in one of the three activities:

- Takedown of offender
- Control and Restrain
- Search and Escort

**Positions and Tactics should be preplanned when possible**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

42

01400053
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

**APPLYING HANDCUFFS: Team Tactics Standing**

1. **Give clear instructions to the offender.** Verbal directions will allow you to determine compliance or non-compliance.





- "Stand for search".
- "Place your hand behind your back".
- 
- 

01400054
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## APPLYING HANDCUFFS: Team Tactics Standing



3.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

44

01400055
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|
| v1.6 2016 |

**APPLYING HANDCUFFS  continued:**



4. ████████████████████████████████████████████

5. ██████████████████████████████████████████

6. **Clearance** between the hand and cuffs is checked. ████████████

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

45

01400056
Lewis v. Pugh

| Department of Corrections |
|:---:|
| **Defensive Tactics Manual** |
| v1.6 2016 |

## APPLYING HANDCUFFS  continued:



* ❋ ████████████████████████████
* ❋ You are responsible for the wellbeing of the offender. Maintain physical control

## APPLYING HANDCUFFS  Escorting non-compliant offender :



01400057
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

v1.6 2016

**APPLYING HANDCUFFS  Escorting non-compliant offender :**

**APPLYING HANDCUFFS compliant, becomes non-compliant offender :**

01400058
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

**APPLYING HANDCUFFS compliant, becomes non-compliant offender :**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

48

01400059
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

POSITIONS: 



01400060
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**POSITIONS:**





**Control Position Exercises**
Have a student serve as the offender.
Have the students divide up into three person groups.
One person will serve as the subject (face down, prone, no resistance).
Have one or two officers respond and take positions to control the offender, based on the position of the key officer (first responder).
Rotate the members through the role of down offender so that all receive practice.

As the officers become familiar with relative positioning, they should coordinate the application of restraints.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

50

01400061
Lewis v. Pugh

| Department of Corrections<br>**Defensive Tactics Manual** |
| --- |
| v1.6 2016 |

## Use of Waist and Ankle Restraints:

The application of waist restraints allows for the safe and secure transport of an offender, enhancing the safety, security and reasonable comfort for offenders during lengthy transports.
The following steps should be practiced at all times to ensure officer safety.

**Function Test Waist Restraints.**
1. Check the locking mechanism
2. Check chain and links

**Position offender**
1. Advise offender of restraint application
2. Give clear verbal directions



**Preparation and approach**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

51

01400062
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

### v1.6 2016

**Use of Waist and Ankle Restraints: continued**



### <u>For Compliant offender:</u>



### <u>For non-compliant offender:</u>



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

52

01400063
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

### v1.6 2016

**Use of Waist and Ankle Restraints: continued**

### Removal of Ankle Restraints

### Removal of waist restraints

### Second escort officer

### Removal of Wrist restraints

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

53

01400064
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**Use of Flex Restraints:**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

54

01400065
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## Use of Flex Restraints: Continued



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

55

01400066
Lewis v. Pugh

| **Department of Corrections** |
| --- |
| **Defensive Tactics Manual** |
| v1.6 2016 |

## IMPEDANCE TACTICS / OFFICER SURVIVAL

Impedance tactics techniques are designed to impede an attack or aggressive act. Ultimately, allowing staff to apply of Control Tactics or to disengage to ██████████████████

Once successful, the force employed should be de-escalated to what is reasonable and necessary. Especially important with Impedance Tactics since the probability of injury is higher.

Staff should have a firm grasp of Control Tactics prior to this training to ensure that staff have the lower force options to transition too.

Use these techniques sparingly.  They involve the use of bodily impact weapons and therefore, increase the risk of injury to staff as well as the offender.  Be aware of your own abilities and limitations.

**Impedance Tactics work in 4 ways.**  ██████████████████

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

56

01400067
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

57

01400068
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

### v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400069
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



01400070
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

60

01400071
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

61

01400072
Lewis v. Pugh

# Department of Corrections
## Defensive Tactics Manual
v1.6 2016



62

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400073
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



01400074
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

64

01400075
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400076
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

66

01400077
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

67

01400078
Lewis v. Pugh

| Department of Corrections |
|:---:|
| **Defensive Tactics Manual** |
| v1.6 2016 |



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

68

01400079
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |



01400080
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

70

01400081
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

71

01400082
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400083
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

73

01400084
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

74

01400085
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

75

01400086
Lewis v. Pugh

# Department of Corrections
## Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

76

01400087
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

77

01400088
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

78

01400089
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

79

01400090
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

80

01400091
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

81

01400092
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

### v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400093
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

83

01400094
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

84

01400095
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

85

01400096
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400097
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

## FIREARMS RETENTION

An Armed Corrections Officer carries the responsibility of retaining the firearm at all times in the performance of their official duties.  Officer need to be aware of the possibility an offender or an aggressor might try to gain control or possession of their firearm.

According to a study Department of Justice, of 536 Law Enforcement Officers were killed between 2000 and 2009, 41 were killed with their own gun.

Statistics revealed that in 2009 48 Law Enforcement Officers were killed in the line of duty and of that, 2 were killed with their own gun.

Every year since 2009 at least one officer was killed with their own gun. There was 11 in the year 2003.

Your awareness is most important practice that can prevent an aggressor from obtaining a position of advantage to grab your gun or assault you then take your gun.

Statistics indicate that 5 to 10% of gun takeaways occurred from the rear.  Less then 5% of attempted gun takeaways involved the gun in the officer's hands.

From these statistics, greater emphasis should be placed on front retention drills.

**RCW 9A. 76.023 Disarming a Law Enforcement or Corrections Officer.**

1. A person is guilty of disarming a law enforcement officer if with intent to interfere with the performance of the officer's duties the person knowingly removes a firearm or weapon from the person of a law enforcement officer or corrections officer or deprives a law enforcement officer or corrections officer of the use of a firearm or weapon, when the officer is acting within the scope of the officer's duties, does not consent to the removal, and the person has reasonable cause to know or knows that the individual is a law enforcement or corrections officer.

2. Disarming a law enforcement or corrections officer is class C felony unless the **firearm** involved is **discharged** when the person removes the firearm, in which case the offense is a class B felony.

Equipment Retention is the use of Impedance Tactics, mobility, and techniques designed for an officer to retain their ███████████████████████ Deadly Force is justified to retain your firearm and can be for ███ depending on circumstances the officer is faced with at the time.

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

87

01400098
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

## EQUIPMENT RETENTION – ███████████████████

**Bas**

- █████████████████
- █████████████████
- █████████████████

███ **striking techniques**

- █████████████
- █████████████
- █████████████
- █████████████
- █████████████

████████████████



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

88

01400099
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## EQUIPMENT RETENTION

- 

- 

**Primary Retention Techniques**



01400100
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION



Pictures may only depict firearms retention.  In reality, there is no significant difference in retaining any of the items on the duty belt; only what level of force is used to retain my restraints vs. my firearm.  Force options such as ███████████ are priority and up to and including deadly force can be used to retain them.

Request assistance – ██████████████████████████

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

90

01400101
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

91

01400102
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|
| v1.6 2016 |

## FIREARMS/EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

92

01400103
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## FIREARMS/EQUIPMENT RETENTION

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

93

01400104
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016

## FIREARMS/EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

94

01400105
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

95

01400106
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

96

01400107
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

97

01400108
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

98

01400109
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## Ground FIREARMS/EQUIPMENT RETENTION



01400110
Lewis v. Pugh

| Department of Corrections |
| --- |
| **Defensive Tactics Manual** |
| v1.6 2016 |

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

100

01400111
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

101

01400112
Lewis v. Pugh

## Department of Corrections
## Defensive Tactics Manual

v1.6 2016

## EQUIPMENT RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

102

01400113
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**SELF DEFENSE**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400114
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**SELF DEFENSE**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400115
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

## SELF DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

105

01400116
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

## SELF DEFENSE ███ - RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

106

01400117
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

## SELF DEFENSE ▮ RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

107

01400118
Lewis v. Pugh

## Department of Corrections
# Defensive Tactics Manual

v1.6 2016

## SELF DEFENSE ███ - RETENTION



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

108

01400119
Lewis v. Pugh

| Department of Corrections **Defensive Tactics Manual** |
|---|

| v1.6 2016 |
|---|

## FIREARMS/ ██ RETENTION

### Seven Step Survival Drill

Attacker attempting to disarm officer at █████████████
- Officer's reactive reflex is critical to surviving attach and retaining gun.

**Step One**
- ████████████████████████████
- ████████████████████████████

- ████████████████████████████
- ████████████████████████████
- ████████████████████████████

**Step Two**
- ████████████████████████████
- ████████████████████████████
- ████████████████████████████
- ████████████████████████████
- ████████████████████████████

**Step Three**
- ████████████████████████████
- ████████████████████████████

**Step Four**
- ████████████████████████████
- ████████████████████████████

- ████████████████████████████
- ████████████████████████████

**Step Five**
- ████████████████████████████
- ████████████████████████████

**Step Six**
- ████████████████████████████
- ████████████████████████████
- ████████████████████████████

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

109

01400120
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**FIREARMS** ███ **ETENTION**

**Step Seven**
-
-
-
-

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

110

01400121
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400122
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

112

01400123
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

113

01400124
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

114

01400125
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

115

01400126
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016

DEFENSE

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

116

01400127
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

DEFENSE

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

117

01400128
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400129
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE

01400130
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

120

01400131
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

121

01400132
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

122

01400133
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

123

01400134
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

**DEFENSE**

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

124

01400135
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

**DEFENSE**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

125

01400136
Lewis v. Pugh

**Department of Corrections**
# Defensive Tactics Manual

v1.6 2016

DEFENSE



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

126

01400137
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

01400138
Lewis v. Pugh

**Department of Corrections**
**Defensive Tactics Manual**

v1.6 2016

DEFENSE

Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

128

01400139
Lewis v. Pugh

| Department of Corrections |
| :---: |
| **Defensive Tactics Manual** |
| v1.6 2016 |

**DEFENSE**



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

129

01400140
Lewis v. Pugh

**Department of Corrections**
## Defensive Tactics Manual

v1.6 2016

## WA DOC MDTI Group 2011



Providing critical knowledge and skills required of our staff in the use of force and self-defense.

## WA DOC DT Working Group 2015



Emergency Operations Unit
Washington State Department of Corrections 2015
Prisons Division Defensive Tactics Manual v1.6

130

01400141
Lewis v. Pugh

# Prisons Division In-service Control Tactics/OC                8 hour – 2016

| **Performance Objectives:** | **Performance Expectations:** |
|---|---|
| • Participate in Use of Force Policy and Case Law review | • Participate in all Defensive Tactics training. |
| • Participate in ██ related training and tactics | • Adhere to all ground and safety rules identified by DTI |
| • Perform control tactics that require the application of balance disruption and pain compliance techniques. | • Participate at speed directed to perform at |
| | • Participate in Drills at Slow discovery speeds |
| • Retain skills to control non-compliant offenders | • Perform appropriate techniques with ████████ |
| • Pass written test and practical closed skills test. | • Demonstrate quick securing of ████ ther than back in pouch |
| • NEW Speed and intensity for drills – Warm up with falling and getting up routines | • Identify injuries to DTI immediately |

| # | Topic | Related Objectives | Strategy/Activity | Materials | Time |
|---|---|---|---|---|---|
| 1 | INTRODUCTIONS | – Safety First<br>– In-service vs. Initial training session<br>– Skill retention – proficiency and fluency | Full participation is required:<br>– Perform techniques<br>– Have techniques performed on them. | Roster<br>DT Manual | |
| 2 | Objectives | – Participate in Use of Force Policy review<br>– Perform and have Control Tactics performed on you to include restraints and team tactics<br>– Apply wrist, waist, and ankle restraints.<br>– Participate in Team Tactics<br>– Pass written and practical testing | – Set expectations<br>– Establish ground rules<br>– Everything on the written test will be covered in this training session.<br>– Practical testing will not be timed. | DT Manual | 1.5 hour<br><br>1.5 |
| 3 | POLICY REVIEW<br>USE OF FORCE | – Identify levels of resistance.<br><br>– Explain reasonable and necessary force<br><br>– Review 4th and 8th Amendment case law | – Offender actions<br>– Risk assessment<br>– Officers Response<br>– Transition to Control Tactics | – Use of Force Policy<br>– Power Point | |
| 4 | ████████ | – ████████████ | – Use of Force review use in self-defense and defense of another<br>– ████ | – DT Manual<br>– Power Point<br>– ██ videos | 30 min<br><br>2 |
| 5 | Safety briefing and Warm-up | – Restate ground rules and safety measures.<br>– Establish emergency plan.<br>– NEW Warm up and Breath work | – ████████████<br>**when experiencing too much pain or pressure.**<br>– Falling and getting up exercises | – DT Manual | 15 minutes<br><br>2.25 |

Emergency Operations Unit
Washington State Department of Corrections 2016
Control Tactics – Restraints – Team Tactics v 1.5

1

01400142
Lewis v. Pugh

# Prisons Division In-service Control Tactics/OC                8 hour – 2016

| # | Topic | Related Objectives | Strategy/Activity | Materials | Time |
|---|-------|--------------------|--------------------|-----------|------|
| 6 | CONTROL TACTICS<br>–<br>■■■■■■■ | – Emphasize Retention of Skills with the minimal time allowed for practicing and training these skills.<br><br>– Fluent and proficient performance of technique will aid staff in controlling offender with little or no injury to staff and offender.<br><br>– Introduce performing techniques with ■■■■ ■■■ in hand where appropriate. | – Learning speed/half speed demonstrated.<br>– Lecture, tell, show, do, feedback<br>– Observe and provide feedback to group.<br>– Feedback should not be given during testing.<br>– Student pass when they perform technique 3 consecutive times and at least once and all primaries are observed. | – DT Manual<br>– Test forms<br>– Duty Belts<br>– ■■■■■■■<br>– Restraints<br>– Keys | 3.5 hours<br><br>5.75 |
| 7 | Balance Control<br>This is Mandatory for 2016 | – Self-discovery<br>– Role player triggers movement<br>– Single and multiple officer drills<br>– Core Movement Principles<br>   ○ Breath control<br>   ○ Relaxation<br>   ○ Structure<br>   ○ Mobility<br>– Core Mindset Principles<br>   ○ Goals<br>   ○ Imagery<br>   ○ Self – Talk<br>   ○ Emotion Control | – 5 Story building structural points<br>   ○ ■■■■■■<br>   ○<br>   ○<br>   ○<br>   ○<br><br>– **SLOW Movement**<br>– Resistance – light to moderate<br>   ○ Single and multiple officer<br>   ○ Both on offender<br>   ○ One on offender second joins<br>– Ground Drills<br>– Standing Drills<br>– **Role player triggers use of force by:**<br>   ○ ■■■■■■<br>   ○<br>   ○<br>   ○ | DT Manual<br>PCR Manual | 1 hour |
| 8 | Entry to Escort | –<br>– ■■■■■■■<br>–<br>– | – ■■■■■■■ | DT Manual | 10 minutes Max |

Emergency Operations Unit
Washington State Department of Corrections 2016
Control Tactics – Restraints – Team Tactics v 1.5

2

01400143
Lewis v. Pugh

# Prisons Division In-service Control Tactics/OC                 8 hour – 2016

| # | Topic | Related Objectives | Strategy/Activity | Materials | Time |
|---|-------|--------------------|--------------------|-----------|------|
| 9 | ██████ Take down | – ██████████████████ – – – – – – | – ██████████████████ – – | – DT Manual – Handcuffs and keys – Duty belt or handcuff pouch and belt. – ████████ | 10 minutes Max |
| 10 | ████████ | – ████████████████ – – – | – ████████████████ | DT Manual | 10 minutes Max |
| 11 | ████████████ take down | – ████████████████ – – | – ██████████████████ – | DT Manual | 10 minutes Max |

01400144
Lewis v. Pugh

# Prisons Division In-service Control Tactics/OC                    8 hour – 2016

| # | Topic | Related Objectives | Strategy/Activity | Materials | Time |
|---|-------|--------------------|--------------------|-----------|------|
| 12 | Take Down Review | – Warm up<br>– Injury assessment<br>– Skill assessment | – Review all take downs trained<br>– Warm up session<br>– Injury assessment<br>– Speed and intensity reminder | DT Manual | 10 minutes |
| 13 | ███████ | ███████ | – Introduce technique from the escort position.<br>– Once the skill is obtained have students apply technique from the side, front, and rear.<br><span style="color:red">– With and without</span> ██████ <span style="color:red">n hand</span><br>• ██████<br>• ████ | – DT Manual<br>– Handcuffs and keys<br>– Duty belt or handcuff pouch and belt.<br>– ██████ | 10 minutes Max |
| 14 | ███████ | | | | 30 minutes Max |
| 15 | ████ | | | | 10 minutes Max |
| 16 | ███████ | | | | 10 minutes Max |
| 17 | █████ | | | | 10 minutes Max |
| 18 | ██████ | | | | 10 minutes Max |
| 19 | Practical TESTING | – Testing and retesting<br>– Perform technique 3 times, must perform all primaries at least 1 time of the 3 times to pass. | – One instructor testing<br>– One instructor reviewing<br>– Testing will not be timed | – Test Forms | 1 hour 6.75 |

Emergency Operations Unit
Washington State Department of Corrections 2016
Control Tactics – Restraints – Team Tactics v 1.5

4

01400145
Lewis v. Pugh

# Prisons Division In-service Control Tactics/OC                8 hour – 2016

| # | Topic | Related Objectives | Strategy/Activity | Materials | Time |
|---|-------|-------------------|-------------------|-----------|------|
| 20 | Team Tactics<br><br>Restraint application and escorting offender | – Pre-planning<br>– Compliant and non-compliant<br>– Pressure points/Pain compliance<br>████████████<br>–<br>–<br>–<br><br>– ████████ | – ████████<br>–<br>–<br>–<br><br>– Half speed/Learning speed<br>– Verbal to physical<br>– Team Tactics<br>– Self Defense of another | – Handcuffs and keys<br>– Duty belt or handcuff pouch and belt.<br>– ████████<br>– DT Manual | 45 minutes Max<br><br>7.5 |
| 21 | Waist and Ankle restraints<br>Refer to Use of Restraints Policy 420.250 and RCW 72.09.015 for use on pregnant offender | – Appropriate use<br>– Application and Removal<br>– Wrist to Waist transition<br>– ████████ | – Proper application, escort, and removal<br>– Team Tactics | – Restraints<br>– Pad lock<br>– Keys | |
| 22 | Flex Restraints | – When to use<br>– Application and removal<br>– WRAP restraint | – Proper application, escort, and removal<br>– Team Tactics | – Flex cuffs<br>– Ripp<br>– Cutters | |
| 23 | Written TESTING | – Test<br>– Class evaluation | – Open notes and policy | – Written test | 30 minutes 8.0 |

Emergency Operations Unit<br>Washington State Department of Corrections 2016<br>Control Tactics – Restraints – Team Tactics v 1.5

5

01400146
Lewis v. Pugh

## 2016 CONTROL Tactics Practical Testing

**NAME:**                                          **DATE:**



| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1-2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ |  |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ |  |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ |  |  |
| ☐ ☐ ☐ |  |  |
| ☐ ☐ ☐ |  |  |

**Comments:**

**Rater:** _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|



| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1-2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ |  |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ |  |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ |  |  |
| ☐ ☐ ☐ |  |  |

**Comments:**

**Rater:** _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|

## Mark only the primary and secondary that were not performed

## 2016 CONTROL Tactics Practical Testing

**NAME:**                                              **DATE:**

███████████████████████

| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1 -2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | | |
| ☐ ☐ ☐ | | |
| ☐ ☐ ☐ | | |

**Comments:**

**Rater:** _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|

███████████████████████

| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1 -2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |

**Comments:**

**Rater:** _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|

## Mark only the primary and secondary that were not performed

01400002
Lewis v. Pugh

## 2016 CONTROL Tactics Practical Testing

NAME:                                    DATE:

████████████████████████

| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1-2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | | |
| ☐ ☐ ☐ | | ☐ ☐ ☐ |
| ☐ ☐ ☐ | | |

Comments:

                                    Rater: _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|

████████████████████████

| Primary | Secondary | Tertiary |
|---|---|---|
| 1- 2 -3 | 1-2 -3 | 1 -2 -3 |
| ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ | ☐ ☐ ☐ ██████ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | ☐ ☐ ☐ | ☐ ☐ ☐ |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | ☐ ☐ ☐ | |
| ☐ ☐ ☐ | | |
| ☐ ☐ ☐ | | |
| ☐ ☐ ☐ | | |

Comments:

                                    Rater: _____

| Pass 1-2-3 | Fail 1-2-3 | Retest P or F |
|---|---|---|

**Mark only the primary and secondary that were not performed**

01400003
Lewis v. Pugh

## Use of Force/DT written test KEY



01400004
Lewis v. Pugh

8.

9.

10.

11

12.

13.

14



01400005
Lewis v. Pugh

15.



16.

17.

18.

19.

20.

21.

22.

23.

01400006
Lewis v. Pugh

24.

25.



26.

27.

28.

29.

30.

**Each question is worth 3.3 points, 100 points possible**

**80% to pass**

**Retest if 6 or more are missed**

01400007
Lewis v. Pugh

# Use of Force and OC Written Test

NAME: _____   DATE: _____

INSTRUCTORS: _____

1. ███████████████████████

2. █████████████████████████

████████████████████████████████████████████████████

3. ████████████

████████████████████████████████████████████████████

4. ████████████████████████████████████████████████████

01400008
Lewis v. Pugh

## Use of Force and OC Written Test

5.

6.

7.

8.

9.

10.

11.



01400009
Lewis v. Pugh

## Use of Force and OC Written Test



12.

13.

14.

15.

16.

17.

18.

19.

20.

01400010
Lewis v. Pugh

## Use of Force and OC Written Test

21.

22.

23.

24.

25.

26.

27.

28.

29.

30.



01400011
Lewis v. Pugh